OPINION
Plaintiff-appellant, Leigh Banks, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion to dismiss of defendant-appellee, Nationwide Mutual Fire Insurance Company ("Nationwide") pursuant to Civ.R. 12(B)(6). Plaintiff assigns the following errors:
 I. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT.
 II. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S CLAIM FOR FRAUD.
 III. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S CLAIM FOR VIOLATION OF THE DUTY OF GOOD FAITH AND FAIR DEALING.
 IV. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT REQUIRING THE CREATION OF A CONSTRUCTIVE TRUST.
For the reasons set forth below, we affirm in part and reverse in part, finding that although the trial court properly dismissed part of plaintiff's complaint against Nationwide, plaintiff sufficiently stated a claim for relief against Nationwide on other grounds. See O'Brien v.University Community Tenants Union (1975), 42 Ohio St.2d 242; and Slifev. Kundtz (1990), 40 Ohio App.2d 179.
According to plaintiff's complaint, plaintiff entered into an insurance contract with Nationwide for the repair of her vehicle in the event of collision. Plaintiff alleged her insured motor vehicle was damaged in an accident, she took her vehicle to the manufacturer's dealership, and she received a repair estimate of $4,597. She asserts Nationwide insisted she obtain a bid from Wreck Tech, which provided an estimate of $3,679. According to plaintiff, Wreck Tech explained on its estimate form that twelve of the forty-two replacement parts would be "supplied by a supplier other than the original equipment manufacturer." (Complaint, par. 27.) Such parts are commonly referred to as non-OEM parts, and in plaintiff's estimate included exterior crash parts: bumpers, grills, radiator supports, fenders and hood. Plaintiff alleges she complained about the use of non-OEM parts and the amount of the estimate, but Nationwide refused to pay for OEM parts and gave her a check based on the estimate issued by Wreck Tech. Plaintiff does not allege that any non-OEM parts were installed on her vehicle. Rather, plaintiff asserts the Nationwide check, based on the estimate issued by Wreck Tech, was insufficient to provide the promised level of repairs.
The parties agree on the text of the insurance policy and endorsements. Under "Coverages," below the heading "Insuring Agreements," the insurer agreed:
 B. COLLISION. To pay for any direct and accidental damage including glass breakage to the described automobile and its equipment, other than trailers, caused by collision or upset of such automobile, less the deductible amount * * *.
Under the "Limits of Liability" heading, under "Conditions," the insurance policy stated:
 The limit of the Company's liability for loss is the actual cash value of the automobile or its damaged parts at time of loss. The Company may pay any loss or repair or replace the automobile or its damaged parts, or may return stolen property * * *.
The parties further agree that the policy includes the following amendatory Endorsement 2276A, which states in pertinent part:
 B. Collision. To pay for any direct and accidental damage including glass breakage to the described automobile and its equipment, other than trailers, caused by collision or upset of such automobile, less the deductible amount * * *.
* * *
5. LIMITS OF LIABILITY
Coverages A and B
 The limit of the Company's liability for loss is the actual cash value of the automobile or its damaged parts at time of loss. The Company may pay any loss or repair or replace the described automobile or its damaged parts with parts furnished either by original equipment manufacturers or non-original equipment manufacturers.
The Company may return stolen property * * *. In addition to payment of the loss, necessary and reasonable towing and storage will be paid to protect the automobile from further damage. (Emphasis added.)
Two contentions are at the heart of plaintiff's complaint. Initially, plaintiff asserts that Nationwide breached its contract by requiring repair shops to use non-OEM parts to repair damaged vehicles. Similarly, plaintiff claims a breach of contract when Nationwide paid reimbursement for losses directly to the insured by calculating the payment based on non-OEM parts.
Secondly, plaintiff asserts that, regardless of whether the contract permits the insurer to provide non-OEM parts, Nationwide nonetheless had an obligation to provide replacement parts that were materially equivalent to that of the damaged parts. Plaintiff contends that Nationwide breached that duty when it provided non-OEM parts of materially inadequate and inferior quality. In that regard, plaintiff concedes she is not arguing that non-OEM parts are inherently deficient. Rather, she asserts that the non-OEM parts "used by Nationwide" were materially inadequate, inferior, and/or defective.
Pursuant to the above-quoted language of the insurance policy, the contracting parties plainly agreed to the use of non-OEM parts to repair damaged vehicles. The contract unambiguously states that Nationwide may satisfy its obligations to repair vehicles by providing parts made by manufacturers other than the original manufacturer. Moreover, the specific, limiting language regarding non-OEM parts does not conflict with the more general language regarding the insurer's obligation to repair damaged vehicles in the event of a collision. Rather, the amendatory language permitting the use of non-OEM parts defines and describes the insurer's obligation to repair. Thus, plaintiff cannot reasonably argue that the insurer had an obligation to provide OEM parts exclusively.
Given the plain and unambiguous language in the contract regarding the type of parts that may be used for repairs, plaintiff did not state a claim for breach of contract when she alleged that Nationwide required the use of, or premised its repair estimates on, non-OEM parts. We therefore affirm the trial court's conclusion that plaintiff failed to state a claim for breach of contract based solely on the practice of requiring the use of non-OEM parts for the repair of vehicles, or paying the cost of non-OEM parts.
Nonetheless, even though Nationwide had the right to provide non-OEM parts in meeting its obligation to repair, the contract included an implied agreement that, regardless of who manufactured the parts, the replacement parts would be comparable to OEM parts in design, make and quality. In other words, although Nationwide had the contractual right to provide non-OEM parts, it did not have the contractual right to provide defective parts or parts that were substandard as compared to non-OEM parts that are comparable in design, make and quality to OEM parts ("allowable non-OEM parts") to the parts that were damaged.
This implied term of the contract flows from Nationwide's obligation of good faith and fair dealing. When an insurer promises to provide repair parts for a vehicle, the insured may reasonably expect that the replacement parts will be comparable to the parts to be replaced. See, generally, Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272; Zoppov. Homestead Ins. Co. (1994), 71 Ohio St.3d 552. Thus, any insurer engaged in the practice of providing non-OEM parts which were materially substandard or defective, as compared to allowable non-OEM parts, would be in violation of its contract. We note that to determine whether the non-OEM parts were substandard or defective, the comparison is to allowable non-OEM parts, not OEM parts.
Here, plaintiff has alleged that: (1) Nationwide engaged in the practice of providing materially inferior, inadequate and/or defective parts, (2) the amount of the check was based on the cost of materially inferior, inadequate, and/or defective parts, and (3) the check provided by Nationwide did not meet its contractual obligation to repair plaintiff's vehicle. Given those allegations, the trial court improperly concluded that plaintiff can prove no set of facts in support of her claim which would entitle her to relief. The trial court thus erred in dismissing that part of the complaint in which plaintiff alleged that the payment plaintiff received was insufficient due to a calculation based on substandard or defective non-OEM parts as compared to allowable non-OEM parts.
Regarding Nationwide's obligation to pay for repairs, the parties vigorously dispute the nature and extent of the insurer's promise to repair damaged vehicles, raising several specific issues including the following: (1) whether Nationwide promised to restore vehicles to their pre-loss condition, (2) whether Nationwide promised to restore vehicles to their pre-loss actual cash value, (3) whether Nationwide promised to compensate owners for diminution in value following a collision, and (4) whether Ohio Adm. Code 3901-1-54 is applicable to a determination of the contract rights or otherwise applicable to the claims stated by plaintiff, issues discussed in cases such as Morrison v. AllstateIndemnity (Sept. 9, 1999), U.S. Dist.Ct. (M.D.Fla.) Case No. 98-377-CIVJ-20C, and Avery v. State Farm Mutual Auto. Ins. Co. (Oct 8, 1999), Ill. Cir. Ct. (Williamson Co.) Case No. 97-L-114.
The trial court, however, addressed none of those issues, given its dismissal of the complaint based on the amendatory endorsement permitting use of non-OEM parts. Because the complaint states a claim for breach of contract to the extent noted above, the trial court will have the opportunity to address the issues in the first instance in the context of the proceedings on remand.
Accordingly, plaintiff's first assignment of error is sustained in part and overruled in part.
Plaintiff's second assignment of error asserts the trial court erred in dismissing her claim of fraud. The Supreme Court of Ohio has identified six elements that must be proven to establish a claim of fraud: (1) a representation or, where there is a duty to disclose, concealment of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. Burr v. Stark Co. Bd. of Cmmrs. (1986), 23 Ohio St.3d 69.
As with her contract claim, plaintiff's fraud claim appears to have two distinct aspects. Initially, plaintiff alleges that, by promising to restore vehicles to pre-accident condition and then offering non-OEM parts as a regular practice, Nationwide defrauds its customers because non-OEM parts cannot restore a vehicle to pre-accident condition. Given Nationwide's disclosure that non-OEM parts could be used for repairs, coupled with Wreck Tech's disclosure that replacement parts would include non-OEM parts, plaintiff cannot state a claim for fraud based solely on the fact that Nationwide provided or offered to provide non-OEM parts for her vehicle repair: plaintiff cannot reasonably argue that she was justified in relying on general language about repairs to the exclusion of specific and unambiguous language stating the insurer's option to provide non-OEM parts. To the contrary, plaintiff had every reason to expect that the insurer would supply non-OEM parts. Moreover, plaintiff stated at oral argument that she was not alleging that non-OEM parts are necessarily deficient per se. As a result, plaintiff's allegation that Nationwide committed fraud by calculating her reimbursement check based on non-OEM parts does not state a claim.
Plaintiff, however, also alleged that Nationwide engaged in a widespread practice of promising to provide a certain level of repair and then insisting that, after sustaining losses, policyholders accept parts Nationwide knew to be materially substandard or defective. According to plaintiff's complaint, Nationwide intended from the inception of the contractual relationship to provide substandard or defective non-OEM parts, as compared to allowable non-OEM parts, but concealed that intention from plaintiff, causing her to enter into or remain in her insurance contract with Nationwide in the reasonable expectation and in reliance on the representation that, following a collision, her vehicle would be repaired with parts of materially equivalent quality and performance, whether OEM or non-OEM.
Reduced to its essence, plaintiff's complaint asserts:
 (1) Nationwide deliberately made promises that it never intended to keep, thereby inducing plaintiff to pay insurance premiums, and
 (2) plaintiff, relying on those representations, suffered a covered loss but Nationwide followed through on its scheme to deny the promised level of repairs that plaintiff reasonably expected from the contract language.
Given those allegations, plaintiff's complaint sufficiently states a claim for fraud. Nonetheless, the allegations regarding representations in advertising materials, including the website, cannot support plaintiff's claim of fraud. Plaintiff never alleged she saw the advertising materials or visited the website. Thus, even if those materials exist as alleged, plaintiff has failed to allege any reliance on them.
Accordingly, plaintiff's second assignment of error is sustained in part and overruled in part.
Plaintiff's third assignment of error focuses on the duty of good faith and fair dealing. Ohio courts have held that the duty of good faith and fair dealing gives rise to a cause of action in tort separate from a claim sounding in contract. Hoskins, supra. See, also, Zoppo, supra.
Here, as noted, plaintiff has alleged deliberate concealment and intent to deprive plaintiff of benefits promised to her under the contract. Regardless of whether she can prove them, the allegations state a claim for bad faith in the processing of her insurance claim, sufficient to withstand a motion under Civ.R. 12(B)(6). While most of the reported decisions focus on a complete refusal to pay a claim rather than an alleged insufficient payment of the claim, insurers nevertheless have a duty to act in good faith in the processing of a claim, and a violation of that duty is actionable. Plaintiff's third assignment of error is sustained.
 In her fourth assignment of error, plaintiff contends the trial court erred in dismissing her claim for unjust enrichment. The doctrine of unjust enrichment provides an equitable remedy, under which the court implies a promise to pay a reasonable amount for services rendered where a party has conferred a benefit on another without receiving just compensation for his or her services. Thus, under the theory of quantum meruit, a party may recover compensation in the absence of a contract where an unjust enrichment would result if the recipient were permitted to retain the benefit without paying for it. Paugh Farmer, Inc. v. Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44; Fox Associates Co. v. Purdon (1989), 44 Ohio St.3d 69.
Under these equitable principles, a contract is implied as a legal fiction under a theory of quasi-contract, which does not rest on the written intent between the parties but is imposed to prevent injustice.Paugh, supra, at 46. Where, however, a written contract between the parties addresses the matter in dispute, the contract governs the parties' performance, unless the contract is void due to illegality, fraud, or otherwise cannot govern the relationship. Generally, where damages are available for breach of contract or in tort, the party cannot also invoke the equitable remedy for unjust enrichment. Rather, if no remedy is available in contract or tort, then the equitable remedy in unjust enrichment may be afforded to prevent injustice. See, generally, AultmanHosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 55;Norton v. Gallon (1989), 60 Ohio App.3d 109, certiorari denied (1990),48 Ohio St.3d 711; Weiper v. W.A. Hill Assoc. (1995),104 Ohio App.3d 250; Sammarco v. Anthem Ins. Cos. (1998),131 Ohio App.3d 544, 557. In addition, although the remedy of restitution for unjust enrichment has been applied under some circumstances in the absence of any quasi-contractual relationship, such as where the case involves a compensation-paying relationship imposed by statute, those circumstances are not present here. Cf. Liberty Mut. Ins. Co. v. Indus.Comm. (1988), 40 Ohio St.3d 109. Rather, here the parties had a written agreement governing the insurer's obligation to repair damaged vehicles. In addition, plaintiff has stated a claim in tort. The law, therefore, need not imply a debt at equity to provide a remedy. Indeed, under plaintiff's theory, almost every alleged consumer fraud would be actionable as "unjust enrichment," and, likewise, a broad array of contract violations would be actionable as "unjust enrichment." Because it is unnecessary and unwise to broaden this equitable doctrine to provide a remedy in circumstances where remedies at law, in contract and tort, provide an adequate remedy, we overrule plaintiff's fourth assignment of error.
Having sustained in part and overruled in part plaintiff's first and second assignments of error, sustained plaintiff's third assignment of error, and overruled her fourth assignment of error, the judgment of the trial court is affirmed in part and reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.
 ____________________ BRYANT, J.
TYACK and PETREE, JJ., concur.