HOSKINS ET AL., APPELLEES, *v.* AETNA LIFE INSURANCE COMPANY, APPELLANT.

[Cite as Hoskins *v.* Aetna Life Ins. Co. (1983), 6 Ohio St. 3d 272.]

(No. 82-483—Decided August 24, 1983.)

*Condit & Dressing Co., L.P.A.,* and *Mr. James J. Condit,* for appellees.
*Wiles, Doucher, Tressler & Van Buren Co., L.P.A.,* and *Mr. Thomas J. Keener,* for appellant.

WILLIAM B. BROWN, J.

I

A

The key issue presented is whether appellees have sufficiently pleaded a cause of action in tort, stemming from the refusal of their insurer to pay their claim, to allow them to proceed on a punitive damages claim against their insurer.

As a threshold consideration to the punitive damages claim, this court must decide whether a cause of action in tort arising out of an insurance contract lies against an insurer for its wrongful failure to pay a claim of its insured. While this court has not previously addressed this issue, it has, on numerous occasions, addressed the issue of whether tort liability should be imposed where the insurer fails to reasonably settle a third-party claim within the policy limits of the insured. The duty of an insurer to pay the claims of its insured is closely akin to its duty to settle third-party claims, and, as such, existing case law in refusal-to-settle type actions will be helpful in resolving the refusal-to-pay type action at issue herein.

It is well established in Ohio that an insurer has a duty to act in good faith in the settlement of a third-party claim. In the leading case of *Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185 [39 O.O. 365], a case involving the refusal of the insurer to settle a claim within the limits of its liability leading to a judgment against the insured in excess of the insurer's coverage, this court stated in the syllabus as follows:

"1. A liability insurance company which reserves the right to settle, as it deems expedient, any claim against its insured is not liable to the insured for negligence in settling or refusing to settle such a claim.

"2. Such company is liable to respond in damages to its insured if it fails to act in good faith with respect to the settlement of such a claim."

Accord *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148 [21 O.O.2d 420]. See, also, *Centennial Ins. Co.* v. *Liberty Mut. Ins. Co.* (1980), 62 Ohio St. 2d 221 [16 O.O.3d 251]; *Fletcher* v. *Western Natl. Life Ins. Co.* (1970), 10 Cal. App. 3d 376, 89 Cal. Rptr. 78; *Crisci* v. *Security Ins. Co.* (1967), 66 Cal. 2d 425, 429, 58 Cal. Rptr. 13, 426 P. 2d 173.

The imposition of the duty of good faith upon the insurer is justified "because of the relationship between the * * * [insurer and the insured] and the fact that in the insurance field the insured usually has no voice in the preparation of the insurance policy and because of the great disparity between the economic positions of the parties to a contract of insurance; and furthermore, at the time an insured party makes a claim he may be in dire financial straits and therefore may be especially vulnerable to oppressive tactics by an insurer seeking a settlement or a release. *See also Motorist Mut. Ins. Co.* v. *Trainor,* 33 Ohio St. 2d 41 [62 O.O.2d 402] * * * (1973) * * *." *Battista* v. *Lebanon Trotting Assn.* (C.A. 6, 1976), 538 F. 2d 111, 118 (construing Ohio law).

The duty of an insurer to act in good faith and accept reasonable settlements and the duty of an insurer to act in good faith in handling the claims

of its own insured are merely two different aspects of the same duty. As the Supreme Court of California so aptly noted in *Gruenberg* v. *Aetna Ins. Co.* (1973), 9 Cal. 3d 566, 108 Cal. Rptr. 480, 510 P. 2d 1032, "[t]he duty * * * [of an insurer to act in good faith] is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself." *Id.* at 575.

Accordingly, this court holds that, based on the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action against the insurer.

This court must next consider the extent of liability which flows from an insurer's breach of its duty of good faith to pay a claim of its insured. Once again, this court's prior decisions in the refusal-to-settle type action are instructive.

Traditionally, an insured's recovery has been limited to the amount due under the contract, plus interest. This court has, however, recognized certain exceptions to this rule. Notably in the refusal-to-settle type of actions, this court has acknowledged that a breach of good faith in evaluating offers of settlement can render the insurer liable for the entire judgment against the insured, although that judgment exceeds the amount of liability named in the policy. *Hart, supra; Slater, supra.*

The liability of the insurer in such cases does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. See, *e.g., Ketcham* v. *Miller* (1922), 104 Ohio St. 372. Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties. See *Battista, supra,* at 117-118. See, also, *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414 [32 O.O. 454]. This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort.

It must be stressed that under the thrust of cases such as *Hart* and *Slater,* the mere fact that an insurer refuses to settle within the policy limits is not, in itself, conclusive of the insurer's bad faith and does not give rise to tort liability. In order to recover for the excess liability, the insured has the burden to show that the refusal to settle was not made in good faith.

The concept of the lack of good faith was further elaborated upon by this court in *Slater,* paragraph two of the syllabus, providing as follows:

"A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

Applying these principles set forth in the refusal-to-settle type of action to the refusal-to-pay claim type of action, it is clear that whenever an in-

surance company denies a claim of its insured, it will not automatically expose itself to an action in tort. Mere refusal to pay insurance is not, in itself, conclusive of bad faith. But when an insured insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, "* * * such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor." *Hart, supra,* at 188.

Inasmuch as the breach of the duty to act in good faith is tortious in nature, punitive damages may be recovered against an insurer who breaches his duty of good faith in refusing to pay a claim of its insured upon adequate proof.

This court elaborated on the proof necessary to support a claim for punitive damages in *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183-184 [71 O.O.2d 174], when it stated as follows:

"Actual malice was defined in one punitive damages case as ' "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons." ' * * *

"Appellants assert in their sole proposition of law that 'intentional, reckless, wanton, wilful and gross acts which cause injury to person or property may be sufficient to evidence that degree of malice required to support an award of punitive damages in tort actions.' This broad statement is also correct; actual malice may be inferred from conduct and surrounding circumstances. * * *" (Citations omitted.)

In permitting, under the proper circumstances,[5] the imposition of punitive damages against an insurer, this court is not unmindful that exposure to such risks will be detrimental to the consuming public to the extent that their insurance premiums would surely be increased to cover them. But, on the other hand, because of the great disparity of financial resources which generally exists between insurer and insured and the fact that insurance companies are clearly affected with a public interest, there is wisdom in a rule which deters refusals on the part of insurers to pay valid claims where the refusals are both unjustified and in bad faith. Cf. *Findley* v. *Time Ins. Co.* (1978), 264 Ark. 647, 573 S.W. 2d 908; and *Santilli* v. *State Farm Life Ins. Co.* (1977), 278 Ore. 53, 562 P. 2d 965.

While punitive damages are recoverable in the proper case, the following caveat expressed in *Escambia Treating Co.* v. *Aetna Cas. & Sur. Co.* (N.D. Fla. 1976), 421 F. Supp. 1367, 1371, is well taken:

"A distinction must be drawn, however, between that conduct which gives rise to tort liability in the first instance and conduct that justifies imposition of punitive damages. While the outrageous conduct on the part of

---

[5] See *Ali* v. *Jefferson Ins. Co.* (1982), 5 Ohio App. 3d 105; *Sweet* v. *Grange Mut. Cas. Co.* (1975), 50 Ohio App. 2d 401 [4 O.O.3d 399]; and *Kirk* v. *Safeco Ins. Co.* (1970), 28 Ohio Misc. 44 [57 O.O.2d 49], wherein punitive damages were allowed.

the insurer characteristic of many of the cases discussed is not an element of the tort, it may be evidentiary of 'bad faith,' and it is important in considering whether punitive damages are recoverable."

The Supreme Court of California, in refusing to uphold an award of punitive damages, discussed this distinction in *Silberg* v. *California Life Ins. Co.* (1974), 11 Cal. 3d 452, 113 Cal. Rptr. 711, 521 P. 2d 1103:

"It does not follow that because plaintiff is entitled to compensatory damages that he is also entitled to exemplary damages. In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud, or malice. * * * [Citing a California statute.] [W]hile we have concluded that defendant violated its duty of good faith and fair dealing, this alone does not necessarily establish that defendant acted with the requisite intent to injure plaintiff." *Id.* at 462-463.

## B

In view of the law as stated above, this court is now able to address the precise issue raised by this appeal, *i.e.,* whether sufficient facts were pleaded to allow appellees to proceed on their punitive damages claim against their insurer. Close scrutiny of the complaint and a review of the record in this case does not support the court of appeals' determination that the complaint alleged sufficient acts to state a claim for punitive damages or that the facts apparent from the record support the claim for punitive damages. In so concluding, the elements of proof for punitive damages set forth in *Columbus Finance* have remained uppermost in our minds.

The crucial issue in this case was whether the skilled nursing unit was a distinct part of the hospital. If it so constituted, then coverage would be under the convalescent facility clause. If it did not constitute a distinct part, then coverage would be under the hospital expense clause.

Based on the information available to appellant, it cannot be found that it acted with actual malice in determining that the skilled nursing unit was a "distinct part" of the institution. The skilled nursing unit has its own nursing station with specifically assigned nurses, the daily room charge for patient care in this unit is less than half the rate charged for patients in the medical-surgical unit of the hospital, transfer of a patient to this area requires a discharge and a re-admittance, and the unit carries a separate registration and authorization under Medicare as distinguished from the remainder of the hospital.

The complaint, which provides in pertinent part as follows, does not assert sufficient facts to demonstrate that appellant's conduct in denying its insured's claim was motivated by actual malice:

"9. Such refusal to pay is in violation and breach of the terms of said policy and is willful and wrongful, has had and continues to have a complete draining of Plaintiffs' life savings and financial resources and will imminently force the sale of Plaintiffs' home in order to meet the medical expenses of Plaintiff Annalea Hoskins. Plaintiffs say that they bear these burdens

because of the Defendant's willful breach and willful concurrence in said breach of their duties to Plaintiffs under said policy."

To a great extent, appellees' punitive damage claim is premised on appellant's failure to notify appellees of the change in coverage and on its failure to fully investigate appellees' contention that the skilled nursing unit was not a distinct part of the hospital. These facts merely show inaction.

In this regard, Dean Prosser has pointed out that an action in tort cannot ordinarily be based upon a breach of contract which amounts to nonfeasance, which means doing nothing at all, as distinguished from misfeasance, which means doing it improperly. "Much scorn has been poured on the distinction, but it does draw a valid line between the complete non-performance of a promise, which in the ordinary case is a breach of contract only, and a defective performance, which may also be a matter of tort." Prosser, Law of Torts (4 Ed. 1971) 614, Section 92. In light of the fact that the complaint does not allege nor does the record show that there was any affirmative action on the part of the insurer as would support a claim for punitive damages as that term is used in Ohio law, a claim for punitive damages does not lie.

Moreover, the facts indicate that appellant did not blindly ignore appellees' position. Appellant telephoned the hospital to verify that it had a skilled nursing unit and that Mrs. Hoskins was confined therein. When one of appellant's representatives expressed doubt as to which clause of the insurance policy should govern, the file was forwarded to and reviewed by her supervisor. Considering the totality of these factors, there is insufficient evidence to indicate that appellant acted with actual malice in determining that coverage was based on the convalescent care facility clause as opposed to the hospital care clause.

## II

Appellant also raises the issue of whether the trial court erred in permitting, over objection, the testimony of expert witnesses on whether the facility in question was a hospital or a convalescent facility, both terms being defined in the policy.

This court concurs with the holding by the court of appeals that the trial court did not err in allowing this testimony. The questions asked and answered by the experts were directed to the issue of whether the facility in question was in fact a hospital. The experts were not asked their opinion about the language of the policy. Whether the facility was a hospital as defined by the policy was the ultimate question for the jury.

It has long been established in Ohio, reflected first in case law (see *McKay Machine Co.* v. *Rodman* [1967], 11 Ohio St. 2d 77 [40 O.O.2d 87], paragraph one of the syllabus) and now in Evid. R. 702 and 704, that expert evidence may be used where the issue is technical and the expert evidence is helpful to the jury. Accordingly, the trial court did not err in permitting the jury to hear this evidence.

For the foregoing reasons, the judgment of the court of appeals is re-

versed in part and affirmed in part, and the judgment of the trial court is hereby reinstated.

*Judgment accordingly.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES and COOK, JJ., concur.

C. BROWN, J., concurs in part and dissents in part.

COOK, J., of the Eleventh Appellate District, sitting by assignment.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part. I concur in both paragraphs of the syllabus, and in the excellent analysis of the law supporting the legal propositions therein contained. However, I dissent from the judgment of reversal which is based upon the assessment that "[c]lose scrutiny of the complaint and a review of the record in this case does not support the court of appeals' determination that the complaint alleged sufficient acts to state a claim for punitive damages or that the facts apparent from the record support the claim for punitive damages." This conclusion is unfounded. The facts pleaded as well as the evidence in the record support a punitive damages claim.

Civ. R. 8 (A) requires only that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief. Civ. R. 8 (E) requires that each averment of a pleading be simple, concise and direct, and that no technical forms of pleading are required. Paragraphs Nos. 7 and 9 of the complaint allege the willful and wrongful conduct of defendant, resulting in special damages to plaintiffs, within the requirements of Civ. R. 8. For example, plaintiffs allege that tortious conduct caused a complete draining of plaintiffs' life savings and the imminent forced sale of plaintiffs' home. Allegations that an insurer's conduct in refusing to pay a claim is willful and wrongful, even averring special damages flowing therefrom, is sufficient to state a claim for punitive damages. Furthermore, the aggravating circumstances which allow a jury to award punitive damages are evidentiary in nature, and do not belong in a pleading which is required by Civ. R. 8 (E) to be a short and plain statement.

In my view, the record contains sufficient evidence to raise a jury issue that appellant acted with actual malice and in bad faith in determining that coverage was based on the convalescent care facility as opposed to the hospital care claim. Accordingly, the punitive damages award of the jury is supported by the evidence.

The theory of punitive damages rests on the grounds of public policy, a policy which seeks to promote the public safety and to punish a willful wrongdoer in holding him up as an example to others in order to deter them

from offending in a like manner. *Atlantic & Great Western Ry. Co.* v. *Dunn* (1869), 19 Ohio St. 162, 170. As a corollary, punitive damages are allowable for bad faith acts of an insurer. The court of appeals' judgment should be affirmed in its entirety.