**WAYSIDE FARMS, INC., et al.,
Plaintiffs–Appellants,**

v.

**The HARTFORD LIFE INSURANCE
CO., et al., Defendants–Appellees.**

**No. 87–4076.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1989.

Decided Sept. 27, 1989.

David D. Noble (argued), Cleveland, Ohio, for plaintiffs-appellants.

Timothy D. Johnson (argued), Johnson, Hoffman & Fanos, Gregory E. O'Brien, Cleveland, Ohio, for defendants-appellees.

Before KENNEDY and JONES, Circuit Judges, and SILER, Chief District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Plaintiffs, Wayside Farms, Inc. and Rebecca Pool, et al. ("Wayside Farms"), appeal from the district court's judgment, which dismissed its claim against defendant, The Hartford Life Insurance Company ("Hartford"). For the following reasons, we affirm.

## I.

Plaintiffs are beneficiaries of two life insurance policies issued by Hartford Life. The first policy, issued in 1964, insured the life of Judith Loving in the amount of $10,000.00 and designated Rebecca Pool (Loving's daughter) as the beneficiary. The second policy, issued in 1981, insured Loving for $2 million and named Wayside Farms Nursing Home (Loving's company) as the beneficiary. The year of birth listed on both insurance applications is 1920.

Loving died on January 24, 1985. Shortly thereafter, Pool submitted claims for both of the policies. The claims forms and death certificate submitted to Hartford Life listed Loving's date of birth as December 15, 1915. Mary Gilletti, Hartford Life's claims manager, noticed the discrepancy between the birth date listed in the policy and the date found in the claims document and death certificate. According to Gilletti, upon discovery of the age discrepancy, she informed plaintiffs that there might be an age adjustment. Although Gilletti asked Pool to provide authoritative documentation regarding Loving's date of birth, Pool failed to do so. As a result of the discrepancy, Hartford Life's actuary calculated the amount of the age adjustment employing the N.A.I.C. model universal life regulations (N.A.I.C.). According to Gilletti, Hartford Life's associate general counsel assured her that this adjustment comported with the Ohio insurance law.

Before Hartford Life made its final determination, Gilletti suggested a review of the underwriting file to confirm the date of birth. She directed David Moshier, a Hartford Life sales representative, and David Baughman, the agent who prepared both of Loving's insurance policy applications, to conduct an informal investigation into Loving's age. This investigation revealed that Loving had used other birth dates in addition to the 1915 and 1920 dates already known to Hartford Life. A second investigation, conducted by Equifax Services, Inc., an investigating firm specializing in national data searches, also indicated that Loving had used a wide variety of birth dates. Neither inquiry obtained an official birth certificate.

On April 16, 1985, Hartford Life finally paid the beneficiaries $1 million plus interest accrued from the date of Loving's death. Since there was no definitive documentation as to Loving's date of birth, Hartford Life paid the claim based on what it believed to be the most likely date of birth—1917. Hartford Life's payment equaled full benefits due based on the 1917

[*] The Honorable Eugene E. Siler, Chief District Judge of the Eastern District of Kentucky, sitting by designation.

date of birth, with the policy benefits readjusted to reflect the amount of insurance purchased by the premiums paid. These benefits were calculated in accordance with the N.A.I.C. method.

On January 8, 1986, Wayside Farms filed this suit for the full face amount of the policies less the amount actually paid by Hartford Life, plus consequential and punitive damages and attorney's fees. On January 14, 1987, Wayside Farms filed a nearly identical complaint seeking damages from the Hartford Fire Insurance Company, claiming that Hartford Life was its alter ego. The two actions were subsequently consolidated for trial. From October 7–15, 1987, a jury trial was held to determine Hartford Life's liability. On October 15, 1987, the district court granted Hartford Life's motion for a directed verdict on all issues, and on October 23, 1987, the district court entered an Opinion dismissing Wayside Farms' claims against both companies.

On November 20, 1987, Wayside Farms appealed from the district court's order granting a directed verdict to the Hartford Life Insurance Company. Wayside Farms did not appeal the order directing a verdict for the Hartford Fire Insurance Company.

## II.

■ Wayside Farms' first major argument consists of two parts: that Hartford Life knew or should have known of the age misstatement and that Hartford Life's failure to investigate the age discrepancy constituted bad faith. Wayside Farms first argues that under section 3911.06 of the Ohio Revised Code, an insurance company can not use an incorrect answer on an application for insurance to avoid liability unless it can demonstrate a lack of knowledge of that wrong answer.[1] Wayside Farms asserts that Hartford Life and its agent knew, or through reasonable diligence should have known, of the age discrepancy.

The district court reasoned that since section 3911.06 is part of a statutory scheme which treats age misstatements differently than other answers provided in an insurance application, this section must be read together with two other sections which relate to misstatements of age. Section 3915.05(E) requires the insurer to adjust the benefit payable in accordance with the true age of the insured and the premiums paid.[2] In addition, section 3911.07 specifically excepts an age misstatement from the limitation on defense that an insurer can raise after three annual premiums have been paid.[3]

Ohio law provides that where two statutory provisions seem to conflict, the more specific statute should control. *See* Ohio Rev.Code Ann. § 1.51 (Baldwin 1988). In applying Ohio law to Wayside's claim, the district court concluded that, in light of the statutory scheme, section 3911.06 is not applicable to the Loving claim. We agree with the district court that, to the extent

---

**1.** Section 3911.06 provides that:
No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it was material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.
Ohio Rev.Code Ann. § 3911.06 (Baldwin 1989).

**2.** Section 3915.05 provides that:
No policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless such policy contains: ...

(E) a provision that if the age of the insured has been understated the amount payable under the policy shall be such as the premium would have purchased at the correct age ...
Ohio Rev.Code Ann. § 3915.05(E) (Baldwin 1989).

**3.** Section 3911.07 provides that:
After having received three annual premiums on a policy issued on the life of any person in this state, all companies are estopped from defending upon any ground other than the fraud against any claim arising upon such policy by reason of errors, omissions, or misstatements of the insured in an application made by him on which the policy was issued, except as to age.
Ohio Rev.Code Ann. § 3911.07 (Baldwin 1989).

there is a conflict, sections 3915.05 and 3911.07 control because they specifically refer to age misstatements, whereas section 3911.06 refers to general information contained in the application. Because section 3911.06 is inapplicable, the district court correctly rejected Wayside Farms' claim that Hartford Life is statutorily barred from adjusting the insurance award.

■ Wayside Farms also claims that Hartford Life's failure to investigate the information in its file at the underwriting stage and to resolve the age discrepancy before the policy was issued constituted bad faith. Relying on *Beard v. N.N. Investors Insurance*, 21 Ohio App.3d 219, 486 N.E.2d 1255 (1985), the district court concluded that in order for Hartford Life to be bound, Loving must have fulfilled her duty to provide correct information upon which Hartford Life could rely and to respond to all questions on an insurance form in good faith. It is undisputed that Loving failed to meet that legal duty because she never informed Hartford Life that she was uncertain about her date of birth. Thus, the district court correctly found that her actions, rather than any bad faith by Hartford Life, caused the need for the benefits to be adjusted.

### III.

■ Wayside Farms' second major argument challenges the provision in Hartford Life's policy which requires an adjustment if the age or sex of the insured is misstated. The relevant policy provision states that:

> If the age and/or sex of the insured is incorrectly stated, we will adjust all benefits under this policy to the amount that would have been provided at the correct age and sex.

Because the clause does not indicate what method should be employed to make the age adjustment, Wayside Farms contends that this ambiguous language is susceptible to more than one meaning and thus should be construed in favor of the insured. *See, e.g., Faruque v. Provident Life and Accident Ins. Co.*, 31 Ohio St.3d 34, 508 N.E.2d 949 (1987). In addition, Wayside

Farms claims that the policy provision is different than the statutorily required calculation set forth in Ohio Rev.Code Ann. § 3915.05(E), which requires insurance policies to have a provision stating that "if the age of the insured has been understated, the amount payable under the policy shall be such as the premium would have purchased at the correct age." Ohio Rev.Code Ann. § 3915.05(E) (Baldwin 1989). Wayside Farms argues that the district court erred by finding that the policy provision should be examined within the framework of section 3915.05(E). Finally, Wayside Farms claims that because the method employed by Hartford Life was designed to maximize the benefit adjustment, Hartford Life acted in bad faith.

The district court observed that Hartford Life's age adjustment clause does not indicate which method of calculation to use. When the policy was issued, there was no industry-wide method and there was no evidence in the record which endorsed one method of adjustment over any other. The N.A.I.C. method, used by Hartford Life in the instant case, is regarded even by Wayside Farms' expert as one of a number of acceptable methods. *See* J.App. at 1369. Although not formally adopted in Ohio until 1985, the N.A.I.C. method is currently employed in almost every state, and no evidence suggests that the method is designed to maximize the benefit adjustment in favor of the insurer. Indeed, both parties agreed that the N.A.I.C. method meets Ohio's statutory requirements relative to adjustments for benefits in the event of age misstatements. Thus, we hold that the district court correctly determined that Hartford Life's decision to use the N.A.I.C. method was not the basis for a finding of bad faith.

### IV.

Wayside Farms' third major argument for reversal is that Hartford Life acted in bad faith during the settlement of the Loving claim. Under Ohio law, the burden of proving an insurer's lack of good faith in handling claims is on the insured. *Hoskins v. Aetna Life Insurance Co.*, 6 Ohio St.3d

272, 452 N.E.2d 1315 (1983). The Ohio Supreme Court in *Hoskins* held that there is an implied duty of good faith and fair dealing in the handling of insurance claims. *Id.* The *Hoskins* court further observed that a finding of bad faith can be made when there is evidence that an insurance company made a decision that is not based on the totality of the circumstances or one that is arbitrary or capricious. *Hoskins*, 6 Ohio St.3d at 277, 452 N.E.2d 1315.

■ Wayside Farms maintains that Hartford Life acted in bad faith by intentionally violating Ohio Rev.Code Ann. § 3915.05(K), which provides that: .

No policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless such policy contains:

(K) a provision that when a policy becomes a claim by the death of the insured, settlement shall be made upon receipt of due proof of death or not later than two months after receipt of such proof.

O.R.C. § 3915.05(K) (Baldwin 1987). In order to properly examine this statute, it must be read in conjunction with section 3915.05(E), which requires every policy of life insurance issued or delivered in Ohio to contain "[a] provision that if the age of the insured has been understated the amount payable under the policy shall be such as the premium would have purchased at the correct age." The record indicates that Hartford Life thoroughly investigated the claim in an effort to make a fair settlement in good faith pursuant to section 3915.-05(E). Moreover, it is undisputed that Loving's age, unknown at the time, was a crucial determinant in ascertaining the correct amount to be paid to the beneficiaries. Thus, in examining the totality of the circumstances, we find that Hartford Life did not act in bad faith by failing to settle the claim in a two-month period as required by section 3915.05(K).

■ Wayside Farms also contends that the eight-month lapse between Hartford Life's receipt of the claim and the payment of benefits was unreasonable and constituted bad faith. In addition, Wayside Farms claims that Hartford Life acted in bad faith because it allegedly concealed the results of its investigation into Loving's age, and then attempted to further delay payment of the claim and to deprive benefits owed them by endorsing the final settlement draft with restrictive accord and satisfaction language.

Given the difficulty in resolving the inconsistencies in Loving's date of birth and the efforts exerted by Hartford Life to resolve the dispute, we find that Hartford Life's activities during the settlement process were reasonable and did not evidence bad faith. We also find there is no basis for the claim that Hartford Life concealed the results of its investigation because Hartford Life had no duty to release the results of its investigation. Moreover, the record shows that Hartford Life supplied Wayside Farms' attorney with copies of the Equifax reports. Finally, because the record indicates that the restrictive accord and satisfaction language was pre-printed on the check, and because Hartford Life promptly issued a written disclaimer after plaintiffs returned the original settlement drafts, we find no evidence of bad faith on Hartford Life's part.

V.

For the reasons stated above, the judgment of the district court is AFFIRMED.