OPINION
This action was commenced in 1998 by Daniel L. McKimm and Laura A. McKimm, plaintiffs-appellants, against Westfield National Insurance Company and their agents, appellees, as a consequence of denial of the provision of a defense and coverage under a homeowner's policy issued by Westfield. On August 9, 2000, the Stark County Common Pleas Court granted summary judgment in favor of appellees on the complaint, terminating the litigation in favor of appellees. From this adverse summary judgment appellants appeal to this court, assigning twelve errors:
 ASSIGNMENTS OF ERROR THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO APPROVE APPELLANTS/PLAINTIFFS' MOTION FOR CHANGE OF VENUE.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO FIND THAT WESTFIELD INSURANCE COMPANIES OWED APPELLANTS, McKIMM'S, DUTY TO PROVIDE DEFENSE UNDER PROVISIONS OF THE INSURANCE CONTRACTS.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT WESTFIELD INSURANCE COMPANY WAS NOT ESTOPPED TO DENY COVERAGE BY REASON OF MISREPRESENTATION AS TO COVERAGE PRACTICED UPON APPELLANT, McKIMM, WHEN IN NOVEMBER 1995 WESTFIELD EMPLOYEES AND AGENTS TOLD DANIEL L. McKIMM AND HIS LAWYER THAT HIS WESTFIELD INSURANCE POLICIES DID NOT PROVIDE COVERAGE FOR DEFAMATION.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO ACCORD THE EVIDENTIARY AFFIDAVITS OF DANIEL L. McKIMM AND LAURA A. McKIMM WHICH PRESENTED EVIDENCE STRONGLY IN FAVOR OF THE NON-MOVING PARTY (McKIMMS) SINCE SAID AFFIDAVITS CLEARLY ESTABLISH THAT GENUINE ISSUES OF FACT EXIST WHICH PRECLUDE SUMMARY JUDGMENT.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN THAT IT FAILED TO RECOGNIZE THAT GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE BREACH OF DUTY, GOOD FAITH AND FAIR DEALINGS BY WESTFIELD COMPANIES.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING SUMMARY JUDGMENT FOR THE DEFENDANTS SINCE GENUINE ISSUES OF FACT EXIST AS TO MISREPRESENTATIONS BY WESTFIELD COMPANIES AND EVIDENCE EXISTS THAT McKIMMS RELIED ON THE MISREPRESENTATIONS AND WERE JUSTIFIED IN SUCH RELIANCE.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO FIND THE INSURANCE POLICY PROVISIONS TO BE CONTRADICTORY AND AMBIGUOUS AND WHEN IT FAILED TO CONSTRUE THE INSURANCE CONTRACT PROVISIONS MOST FAVORABLE TO APPELLANTS, McKIMMS.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT APPELLANT DANIEL L. McKIMM VIOLATED A PENAL CODE, STATUTE OR ORDINANCE WHICH PRECLUDED COVERAGE FOR DEFAMATION UNDER THE INSURANCE POLICIES.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT AN INSURANCE POLICY PROVISION PROVIDING DEFENSE AND INDEMNIFICATION FOR INTENTIONAL DEFAMATION IS NOT ENFORCEABLE IN OHIO DUE TO PUBLIC POLICY CONSIDERATIONS.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REVIEW OF "IN-CAMERA" DOCUMENTS, NOT SUBMITTED INTO EVIDENCE, THE CONTENTS OF WHICH WERE NOT SHARED WITH PLAINTIFFS OR PLAINTIFFS' COUNSEL AND REFERRED TO SUCH DOCUMENTS IN ITS DECISION AWARDING SUMMARY JUDGMENT TO DEFENDANTS ON THE "CONSPIRACY" COUNT.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CONCLUDED THAT EVIDENCE OF CONSPIRACY WAS NOT PRESENT.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CONCLUDED THAT EVIDENCE OF FIDUCIARY DUTY WAS NOT PRESENT.
On November 4, 1995, appellant Daniel McKimm was sued for defamation of character by Randy Gonzalez, as a consequence of political advertising derogatory to Gonzalez. Stark County Common Pleas Court No. 1995CV01902. On November 21, 1995, McKimm notified Westfield of the claim, although the content and scope of such notification is in dispute. What is not disputed, for purposes of summary judgment, is that Westfield denied coverage and provision of defense to McKimm. The defamation case proceeded to trial in the Stark County Common Pleas Court. A jury verdict was rendered in favor of Gonzalez and against McKimm in the amount of $38,000 as compensatory damages and $25,000 as punitive damages. After the verdict, McKimm again requested the coverage from Westfield, and was again denied coverage.
The issues in this case are framed by the amended complaint of appellants and the answer and counterclaim of appellees. In their amended complaint, appellants alleged that they were insured under a homeowner's policy and an umbrella policy with Westfield. Charles Bendetta was the insurance agent through whom appellants processed their claims. The complaint alleged that Westfield breached the contracts of insurance in failing to provide a defense and indemnification in regard to the two causes of action filed by Randy Gonzalez. The complaint further alleged that Westfield breached a fiduciary duty by failing to act in good faith in denying a defense and indemnification, and in the manner in which the request for coverage was handled. The complaint further set forth causes of action for conspiracy and frivolous conduct. Appellees filed an answer, claiming, among other defenses, that appellants' claims were barred by appellants' failure to comply with conditions precedent set forth in the insurance contract, by refusal to provide notice as required by the contract, and by refusal to provide copies of notices and other legal papers received in connection with the alleged loss. The answer further claimed that appellants' claims were barred by his knowing or intentional violation of a penal law or ordinance. Appellees counterclaimed, seeking a declaratory judgment that appellees had no legal or contractual obligation to defend or indemnify appellants in the lawsuit filed by Gonzalez.
In its summary judgment, the trial court found and ordered, interalia:
 1. Plaintiff Laura McKimm, although an insured under the policies in question, had no interest in the basic litigation and was not a proper party in the instant case. Summary judgment was granted dismissing her as a party plaintiff.
 2. Plaintiffs' claim of conspiracy was dismissed, following an in camera investigation of certain correspondence "involving defense counsel" for want of any evidence of conspiracy.
 3. Estoppel principles do not apply, as "plaintiffs were represented by counsel as to the question of coverage and a declaratory judgment action to resolve a difference of opinion thereon is a normal legal action. If estoppel was available, no insurer could deny coverage even under a rational basis without the hazards of estoppel."
 4. The court rejected the plaintiffs' argument that failure to provide a defense "directly resulted in the award of punitive damages and such would not have been awarded by the Jury except for the failure of providing the same even though it is conceded that punitive damages were not included in coverage." The court granted summary judgment upon the claim for punitive damages.
 5. As to claims for breach of contract and bad faith, the court, notwithstanding it had no duty to do so, favors us with his rationale for granting summary judgment. The trial court concedes there may be a factual dispute as to "appropriate notice" under the policy, but in effect, finds that fact issue immaterial as a consequence of interpretation of the basic insurance contract. As to that issue, the court found that the contract insures against damages from "accidental" conduct, and observes that the underlying civil action was one involving "violation of a penal statute." Reference is made to the Ohio Supreme Court's view of the predicate proceedings before the Ohio Elections Commission, wherein the court found that McKimm's conduct was based on intentional, actual malice. McKimm v. Ohio Elections Commission (2000), 89 Ohio St.3d 139. The court reasoned through the provisions of the policy, noting the difference between intentional and accidental occurrences. The court concluded as a matter of law that because of the finding of the actual malice, the conduct of appellant McKimm was "clearly intentional and not accidental." The conclusion of the court that there is no coverage preempts the extant factual issues of notice, and requires summary judgment as a matter of law.
We address the assignments of error in the order briefed.
 I
Appellant requested the court to recuse itself, or to change venue, upon a claim of bias, in the context of the political "heat" generated by the underlying defamation case. Appellant noted that all the common pleas court judges in Stark County recused themselves in the underlying defamation case.
The remedy for recusal is an affidavit of bias and prejudice filed with the Chief Justice of the Ohio Supreme Court per R. C. 2701.03. SeeWeinkle v. Southdown, Inc. (September 3, 1993), Greene Appellate No. 92CA107, unreported.
The trial court did not err in determining, within the arena of his discretion, that there was no evidence to justify a change of venue.
The first assignment of error is overruled.
 II III
These assignments of error were amalgamated for briefing and we will consider them similarly.
Appellants claim Westfield is estopped from asserting defenses of lack of notice, policy exclusion, public policy, and/or penal code violations, as a consequence of their own fraud and/or misrepresentation. The thesis is that the duty to defend incorporated in the policy extends to situations where the underlying suit is groundless, false, or fraudulent. That duty is recognized to be a broader duty than a duty of indemnification for loss or damages. Thus, an insurer may have a legal responsibility to provide counsel and a defense to an insured even though the ultimate outcome of the case falls beyond the coverage of the policy.
Appellants claim that the denial of coverage in 1995, when appellants first notified appellees of the suit, was groundless, false and fraudulent, misleading them into relying on a representation of lack of coverage and defense, thereby causing them to retain their own counsel and defend the defamation action. They bolster this argument with testimonial assertions that Westfield made no independent investigation of the claim prior to proclaiming there was no coverage "for defamation".
Appellees countered by admitting that it has a duty to defend if the complaint states a claim that is within the coverage of the policy (Appellees' brief, page 6). Appellees claim there is no duty to provide a defense in the instant case because the claims alleged do not fall within the policy's scope of coverage. They make the same linkage as did the trial court, arguing that although "personal injury" means injuring arising out of libel, slander, or defamation of character, there must be an occurrence, which is defined in the policy as an accident resulting in bodily injury or property damage. Thus, they conclude that while the policy would cover accidental conduct that resulted in defamation of character, it does not cover instances where the conduct was intentional or malicious, rather than accidental.
Appellees also present a "boot strap" argument in support of the summary judgment. They point to the ultimate result of the underlying case and its conclusion concerning intent, as well as the decision in theOhio Elections case, supra, that the conduct of McKimm was in fact intentional.
The policy provides notification duties after an occurrence, claim or suit:
 1. If an occurrence is likely to involve us under this policy, the Insured shall promptly advise us or our agent of:
a. How, when and where the occurrence took place; and
 b. The names and addresses of the injured persons and all witnesses.
 2. If information regarding a claim is received or if legal action is begun, the Insured must immediately send a copy of every notice, demand, report, summons or other legal papers to all applicable primary insurance carriers and to us.
 3. The Insured must cooperate with the primary insurance carrier, as required by the terms of its primary policy, and with us in the investigation, defense and settlement of a claim or suit.
On November 21, 1995, the attorney representing appellants at the time sent a letter to the agent for Westfield, which, inter alia, identified the insured, the claimant, Randy Gonzalez and the case numbers. He references telephone conversations of that day in the letter, and recites:
 As we discussed, these claims are generally in the nature of defamation and Election Commission violations . . . at this time, Mr. McKimm requests that you acknowledge insurance coverage of the above-referenced matters and assume his defense thereof. Morever, in the event that you deny coverage, he asks that you acknowledge receipt of this notification in the event that the claimant amends his claims for damages which may be covered.
Letter of Richard W. Arnold, November 21, 1995.
As to the issue of notice and compliance with the requirement of the contract, Westfield alleges:
 Plaintiff Daniel L. McKimm failed to provide prompt notice of the claims asserted against him and the lawsuit filed against him by Gonzalez and also failed to promptly supply copies of notices or other legal papers he received in connection with such claims and lawsuits.
Answer and Counterclaim, paragraph 8.
In their brief to this court appellants argue, for purposes of summary judgment, that construing the facts most strongly in their favor, appellees allegedly told appellants in November of 1995 that there was no coverage. In his affidavit of July 27, 2000, Daniel L. McKimm asserts that he informed Charles Bendetta and the Charles Bendetta Insurance Agency of his insurance claim against Westfield in mid-November of 1995, and Bendetta advised McKimm that there was no coverage for the Gonzalez defamation action.
We conclude that it is precisely at this point that the trial court erred. The issues of the nature of the scope of the notice of the claim delivered by the insured (McKimm) to the insurer (Westfield), as well as the response of Westfield in peremptorily denying coverage, are genuinely disputed. And whereas the court found such disputes immaterial within the reach of Civ.R. 56, we find, in the exercise of our de novo independent review of the evidence, such issues to be material as to establishing the duty to investigate further the nature and scope of the claims, estoppel to now complain about their failure to investigate, and the contractual responsibility of the insured to notify the insurer of the loss and to "promptly send us copies of notices or other legal papers received in connection with the accident, lawsuit, or occurrence." Policy, Section 2(A)(2)(b). We find the following to be genuinely disputed, material issues:
 1. What was the content and scope of the notice of claim originally delivered to the insurer's agent?
 2. What was the response of the insurer's agent to the original notification? Was the response based upon any independent investigation?
It does not appear to be disputed that appellant did not promptly provide copies of notices or legal papers received in connection with the claim. But if the claim was denied out-of-hand in the first instance, the insured would be excused from supplying the copies, etc., within the contemplation of the insurance policy.
If the fact finder determines that the insurer breached the contract by its failure to provide a defense, the issue of damages will be different than the amount of the underlying judgment for several reasons. Attorney's fees and costs attendant to the trial of the case would be recoverable. Whether the result would be different is highly speculative and would require findings bordering on malpractice as to counsel in the first case.
The second and third assignments of error are sustained.
 IV
The predicate to this assignment of error is that the trial court erroneously failed to consider the affidavits filed by the appellant. Appellees argue that the affidavits in question were not executed in compliance with Civ.R. 56 (E). Our independent review of the summary judgment instructs us that the court considered the pleadings, depositions, briefs, responses, and affidavits submitted.
The fourth assignment of error is unsupported by the record and is therefore overruled.
 V
As noted above in our attention to Assignments of Error II and III, the insurer does owe a duty of good faith in its exercise of its responsibility to receive, investigate and provide a defense where legally required under the terms of the contract. Hoskins v. Aetna LifeInsurance Company (1983), 6 Ohio St.3d 272. As noted above, the facts concerning the scope and extent of the notice given by the insured to appellees' agent is in dispute.
Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably with the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept defense of the claim.Willoughby Hills v. Cincinnati Insurance Company (1984), 9 Ohio St.3d 177.
In 1995, before the ultimate verdict in the case finding intentional conduct, appellants notified appellees that the claim was one for defamation. The policy in question facially states that it provides coverage for defamation actions. For the reasons stated in II and III
above, there is a disputed fact as to whether, based on the notice given by appellants to appellees concerning the nature of the claim, appellees acted in good-faith in denying a defense to the claim without further investigation into the exact nature of the allegations to determine whether the allegations arguably fell within the policy coverage.
The fifth assignment of error is sustained.
 VI
For the reasons stated in Assignment of Error V, the Sixth Assignment of Error is sustained.
 VII
We find no ambiguity in the contract in question as applied to the operative facts of this summary judgment review.
The Seventh Assignment of Error is overruled.
 VIII
In their Eighth Assignment of Error, appellants argue that the court erred in finding that McKimm violated a penal code, statute or ordinance. The trial court stated, "There is no doubt that the conduct prohibited by R.C. 3517.21 constituted a violation of a penal statute. The conclusion that it is not a penal statute because a public reprimand rather than other available options was imposed is not soundly based. The penalty option chosen does not determine whether a statute is penal." (Judgment Entry, August 9, 2000, page 4.)
The trial court did not err in its conclusion in this matter.
The Eighth Assignment of Error is overruled.
 IX
Appellants' claim concerning the court's finding of public policy considerations are not supported either by the language of the court's opinion, or the record.
The Ninth Assignment of Error is overruled.
 X
The trial court conducted an in camera examination of certain records dealing with attorney-client relations. He found that none of these records had a bearing on the motion. The conduct of the trial court in handling the discovery issue was within its discretion and appellant has failed to demonstrate any prejudice in this regard.
The Tenth Assignment of Error is overruled.
 XI
Appellants' claim that the court erred in concluding that evidence of conspiracy was not present is not supported by the record on summary judgment.
The Eleventh Assignment of Error is overruled.
 XII
Appellants' claim that the court erred in concluding the evidence of fiduciary duty was not present is unsupported by the judgment or the record.
The Twelfth Assignment of Error is overruled.
This court concludes the trial court erred in granting summary judgment, and remands the same to the trial court for further proceedings according to law and consistent with this opinion.
By MILLIGAN, P.J., READER, J., and GREY, J., concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, this court concludes the trial court erred in granting summary judgment. The judgment is reversed, and the cause is remanded to the trial court for further proceedings according to law and consistent with this opinion. Costs to appellees.