[Cite as *State v. Stubbs*, 2019-Ohio-4147.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

QUINTAE STUBBS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0010**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 17-CR-159

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane Hanlin*, Jefferson County Justice Center, Prosecutor's Office, 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee, and

*Atty. Lydia Spragin*, 100 North 4th Street, Suite 708, Steubenville, Ohio 43952, for Defendant-Appellant.

Dated:
October 4, 2019

**DONOFRIO, J.**

{¶1}     Defendant-appellant, Quintae Stubbs, appeals from a Jefferson County Common Pleas Court judgment convicting him of improper handling of a firearm in a motor vehicle and having a weapon while under disability.

{¶2}     On November 11, 2017, Ohio State Highway Patrol Trooper Trevor Koontz was sitting in his stationary cruiser in Jefferson County.  Appellant was one of three passengers in a vehicle that drove past Trooper Koontz's cruiser.  Trooper Koontz pulled the vehicle over for speeding.  The trooper eventually arrested the driver for driving under the influence.

{¶3}     After the driver was arrested, the trooper found a handgun and a loaded magazine under the seat where appellant had been sitting.

{¶4}     On November 14, 2017, the trooper filed a complaint against appellant for improper handling of a firearm in a motor vehicle and having a weapon while under disability.  On November 21, 2017, a preliminary hearing was held in Steubenville Municipal Court.  The Steubenville Municipal Court set the matter for another preliminary hearing in the Jefferson County Common Pleas Court.

{¶5}     A Jefferson County Grand Jury subsequently indicted appellant on one count of improper handling of a firearm in a motor vehicle, a fourth-degree felony in violation of R.C. 2923.16(B), and one count of having weapons while under disability, a third-degree felony in violation of R.C. 2923.13(A)(3).

{¶6}     On January 26, 2018, appellant filed a general request for discovery.  Three days later, he filed another general discovery request.  That same day, appellant also filed a general request that the state preserve all physical evidence in its possession.

{¶7}     On February 26, 2018, the trial court held a pre-trial hearing.  At the hearing, appellant raised two issues. First, he took issue with the fact that the first preliminary hearing was held in the Steubenville Municipal Court rather than the Jefferson County Common Pleas Court.  Second, appellant requested a continuance due to how long it would take to test any fingerprints on the firearm.  The court told appellant he could file motions regarding these issues.

Case No. 18 JE 0010

{¶8} On March 14, 2018, appellant filed three motions. First, appellant filed a motion to compel discovery. Appellant specifically requested that plaintiff-appellee, the State of Ohio, provide the chain of custody of all the evidence as well as any other documents relevant to his defense. He also filed a motion to dismiss the case, arguing that the Steubenville Municipal Court had lacked subject matter jurisdiction to hear the case. And appellant filed a motion to test the gun for fingerprints and DNA at the state's expense.

{¶9} The trial court held a hearing on appellant's motions on April 12, 2018. The court sustained appellant's motion to compel discovery, ordering the state to complete discovery within 14 days. The court overruled appellant's motion to dismiss the case. It also overruled appellant's motion for fingerprint and DNA testing of the gun. The court reasoned that, at that point, the gun had already been handled and tested for operability and, therefore, any DNA and fingerprint testing would be a waste of money.

{¶10} On May 14, 2018, appellant filed a motion to exclude the gun arguing the state had contaminated the evidence that appellant had specifically requested it preserve for testing. The trial court treated appellant's motion as a motion to suppress and held a hearing on it. The court ultimately overruled the motion.

{¶11} After the court overruled his motion, appellant changed his plea from not guilty to no contest in accordance with a plea agreement with the state. In exchange for his no contest plea, the state agreed to recommend a total sentence of 30 months. The trial court conducted a plea hearing and accepted appellant's no contest plea. The court then found appellant guilty and imposed the recommended sentence of 30 months in prison: 18 months for improper handling of a firearm and 30 months for having weapon while under disability to be served concurrently.

{¶12} Appellant filed a timely notice of appeal on June 19, 2018. He now raises four assignments of error.

{¶13} Appellant's first two assignments of error raise the same argument. Therefore, we will address them together.

{¶14} Appellant's first assignment of error states:

THE COURT COMMITTED REVERSIBLE ERROR WHEN THE COURT FOUND THAT SPOLIATION DID NOT OCCUR WHEN THE GUN

Case No. 18 JE 0010

WAS TESTED FOR OPERABILITY EVEN THOUGH THE DEFENSE REQUESTED IT BE PRESERVED FOR TESTING.

THE DESTRUCTION OF MATERIALLY EXCULPATORY EVIDENCE, IN THIS CASE THE GUN, WHICH WAS TEST FIRED, BUT NOT TESTED FOR LATENT PRINTS OR DNA, RESULTS IN A DENIAL OF DUE PROCESS REGARDLESS OF THE EXISTENCE OF BAD FAITH.

{¶15} Appellant's second assignment of error states:

THE [STATE] VIOLATED BRADY AND ITS PROGENY WHEN IT DID [NOT] PRESERVE THE DNA/FINGERPRINTS ON THE GUN FOR TESTING BY BCI AS REQUESTED BY THE DEFENSE.

{¶16} Appellant argues that because he was indigent and the gun was material to his defense, the trial court should not have denied his request to have the gun tested at the state's expense. Further, appellant states that the court's refusal to test the gun at the state's expense made it almost impossible for him to raise a defense so much that it was necessary to accept a plea deal from the state.

{¶17} Appellant further argues that the state failed to preserve "materially exculpatory" evidence by allowing the gun to be test fired for operability after he had requested that the state preserve it.

{¶18} The United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the state's failure to preserve evidence in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The Court stated:

The Due Process Clause of the Fourteenth Amendment, as interpreted in [*Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said

Case No. 18 JE 0010

then that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Id.* at 57-58.

{¶19} As appellant points out, the United States Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith. See *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 7. But if the evidence in question is not materially exculpatory, but instead is only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation. *Geeslin*, 116 Ohio St.3d 252, at ¶ 10.

{¶20} Thus, we must first determine if the gun in this case was "materially exculpatory" or only "potentially useful."

{¶21} Evidence is materially exculpatory if it (1) "possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means." *State v. Benton*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist.2000), citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

{¶22} On the other hand, evidence is potentially useful when "no more can be said then that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57.

{¶23} In this case, the gun was not materially exculpatory. The gun, on its face, did not possess an apparent exculpatory value. Nothing about it clearly exonerated

appellant. Instead, the gun was potentially useful. It is possible that had the gun been subject to fingerprint or DNA testing, these tests could have revealed fingerprints or DNA belonging to other occupants of the car instead of appellant. Appellant could have used this evidence, if it existed, to bolster his defense that the gun did not belong to him. But testing also could have revealed appellant's fingerprints or DNA on the gun or the testing could have been inconclusive. Thus, the gun in this case was potentially useful, not materially exculpatory.

**{¶24}** Because the gun was only potentially useful, appellant had to demonstrate that the state acted in bad faith in failing to preserve it for testing.

**{¶25}** Bad faith usually implies something more than bad judgment or negligence. *State v. Tate*, 5th Dist. Fairfield No. 07CA55, 2008-Ohio-3759, ¶ 13. Bad faith involves such things as "'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 80-81, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983).

**{¶26}** In this case, appellant did not offer evidence that the state acted in bad faith.

**{¶27}** At a hearing on the matter, appellant did not offer any witnesses or evidence of bad faith. The prosecutor read from the police report, in which the arresting trooper stated that the passenger who was seated next to appellant in the backseat told him that when the trooper activated his lights to stop the vehicle, appellant removed the gun from his person and stuffed it under the seat. (4/12/17 Tr. 9). The officer also reported that when he was about to stop the vehicle appellant turned around and looked at him. (4/12/17 Tr. 9). The prosecutor also noted that the gun was handled by the officer without gloves when he removed it from the vehicle and transported it to an evidence locker. (4/12/17 Tr. 9). Defense counsel asserted that the other passenger only identified appellant as the gun owner when the trooper threatened her with jail time. (4/12/17 Tr. 10).

**{¶28}** The trial court found that once the gun had been handled, there was no point conducting fingerprint or DNA testing. (4/12/17 Tr. 10).

{¶29}   Appellant's argument to the court of bad faith was simply speculation.  He failed to present any evidence that the trooper acted in bad faith in handling the firearm.  Perhaps it was negligent for the trooper to handle the gun without gloves.  But perhaps he was faced with a situation of officer safety that required him to quickly remove the gun from the reach of the occupants of the vehicle.  Appellant could have called the trooper to testify but did not.  Thus, appellant did not demonstrate that the state acted in bad faith when the trooper handled the gun without gloves.

{¶30}   Appellant also argues the state acted in bad faith when it had the gun test-fired for operability thus "spoiling" the evidence.  He points to the timeline of events in this case for support.

{¶31}   On January 26, 2018, appellant filed a general request for discovery.  Three days later, he filed another general discovery request.  That same day, appellant also filed a request that the state preserve all physical evidence in its possession.  None of these motions specifically requested having the gun tested for fingerprints or DNA.

{¶32}   On February 14, 2018, the gun was test-fired by the state to test its operability, which is one of the elements of the offense appellant was charged with. (5/25/18 Tr. 7).

{¶33}   On February 26, 2018, the trial court held a pre-trial hearing where defense counsel expressed a need for a continuance due to how long it would take to test any fingerprints on the firearm.  The court granted the continuance and told appellant he could file motions regarding the gun issue.

{¶34}   On March 14, 2018, appellant filed a motion to test the gun for fingerprints and DNA at the state's expense.

{¶35}   Again, appellant has failed to demonstrate bad faith on the part of the state in handling the gun.  At the point in time when the state tested the gun for operability appellant had not yet requested that fingerprint and DNA testing be performed on the gun.  Moreover, as stated above, the gun had already been handled by the trooper at the traffic stop thus any fingerprints or DNA evidence was likely contaminated. Therefore, we cannot conclude that the trial court erred in denying appellant's request to have the gun tested at the state's expense.

**{¶36}** Accordingly, appellant's first and second assignments of error are without merit and are overruled.

**{¶37}** Appellant's third assignment of error states:

THE COURT ABUSED ITS DISCRETION WHEN IT DENIED THE MOTION TO EXCLUDE THE GUN.

**{¶38}** Appellant argues the trial court should have granted his motion to suppress the gun because he never had the opportunity to test the gun for fingerprints and DNA.

**{¶39}** Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand*, 116 Ohio App.3d 286, 288, 688 N.E.2d 9 (7th Dist.1996) citing *Tallmadge v. McCoy*, 96 Ohio App.3d 604, 608, 645 N.E.2d 802 (9th Dist.1994). Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice*, 129 Ohio App.3d 91, 94, 717 N.E.2d 351 (7th Dist.1998). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Id*.

**{¶40}** In this case, the trial court did not make any findings of fact in its judgment entry overruling appellant's motion to exclude the gun. Nonetheless, appellant's argument for suppressing the gun hinges on the arguments he put forth in his first two assignments of error. Because we have already determined that (1) the gun was only potentially useful, (2) the state did not act in bad faith in handling the gun, and (3) the trial court properly denied appellant's request for fingerprinting and DNA testing of the gun, the trial court's decision to deny the motion to suppress is supported by substantial, credible evidence.

**{¶41}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶42}** Appellant's fourth assignment of error states:

THE PRELIMINARY HEARING WAS HELD IN THE STEUBENVILLE MUNICIPAL COURT INSTEAD OF JEFFERSON COUNTY COURT #2, WHICH IS THE COURT OF PROPER JURISDICTION. THERE IS NO DENYING THAT MR. STUBBS WAS LATER INDICTED BY THE JEFFERSON COUNTY GRAND JURY; HOWEVER, THE AB INITIO VIOLATION OF MR. STUBBS['] CONSTITUTIONAL RIGHT TO HAVE HIS PRELIMINARY HEARING AND ITS ATTENDANT RIGHT TO HAVE THE SITTING JUDGE OF THAT JURISDICTION TO HEAR AND DETERMINE WHETHER HE SHOULD BE BOUND OVER WAS VIOLATED. A FACT NOT DENIED BY THE JEFFERSON COUNTY PROSECUTOR JANE HANLIN.

**{¶43}** Appellant argues that the Steubenville Municipal Court did not have subject matter jurisdiction over his case. He points out that R.C. 1901.20(A)(1) provides the municipal courts with jurisdiction to hear felony cases committed within their territory. Appellant argues the felonies in this case did not occur within the municipal court's territory.

**{¶44}** A Jefferson County Grand Jury properly indicted appellant on January 10, 2018. This court has observed:

It has been repeatedly held in Ohio that, "[a]n accused in a felony case is not tried upon the affidavit filed against him but on the indictment by the grand jury." *State v. Thacker*, 4th Dist. No. 04CA5, 2004-Ohio-3978, ¶ 12, citing *Foston v. Maxwell* (1964), 177 Ohio St. 74, 76, 202 N.E.2d 425, 29 O.O.2d 194. Any alleged defects in the original charging complaint are consequently irrelevant to convictions based on the grand jury indictment. *Thacker*, supra, citing *State v. Martin*, 4th Dist. No. 01CA24, 2002-Ohio-6140, at ¶ 24; *State v. Jenkins*, 4th Dist. No. 02CA5, 2003-Ohio-1058, ¶ 24.

*State v. Christian*, 7th Dist. Mahoning No. 02 CA 170, 2005-Ohio-2381, ¶ 14.

Case No. 18 JE 0010

{¶45}   Because appellant was properly indicted by a Jefferson County Grand Jury, any defect in procedure that may have occurred by holding a preliminary hearing on the complaint in the Steubenville Municipal Court is harmless error.

{¶46}   Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶47}   For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**