OPINION
{¶ 1} Appellant, Rhonda Coy, appeals from a judgment entry of the Ashtabula County Court of Common Pleas, granting partial summary judgment in favor of appellee, Grange Mutual Casualty Company. For the reasons that follow, we affirm.
 {¶ 2} By way of background, the instant matter originated from a traffic accident which occurred on September 26, 1999, in Harpersfield Township, Ashtabula County, Ohio. Appellant's daughter, Katie J. Coy ("Katie), was operating a 1991 Pontiac Grand Prix that was owned by appellant and covered by appellant's motorist insurance policy (the "policy"), issued by appellee. Due to a tortfeasor's negligent operation of his vehicle, appellant's 1991 Pontiac Grand Prix was damaged.
 {¶ 3} On August 22, 2002, appellant re-filed a complaint in the Ashtabula County Court of Common Pleas, naming appellee as a defendant party. The complaint sought compensatory damages for appellee's denial of appellant's uninsured motorist property damage ("UMPD") claim. Specifically, the complaint asserted that, pursuant to Ohio law, appellant was entitled to UMPD coverage under appellee's policy. The complaint maintained that because neither appellee, nor its agents, made UMPD coverage available, and because the policy included uninsured/underinsured motorist coverage, appellant was entitled to UMPD coverage by operation of law.
 {¶ 4} Moreover, the complaint claimed that appellee's denial of the UMPD claim was made in bad faith and, therefore, appellant was entitled to punitive damages.
 {¶ 5} Following a timely answer, appellee filed a motion for partial summary judgment with respect to appellant's bad faith claim. Appellee argued that, even assuming its denial of the UMPD claim resulted in a contractual breach, there was no evidence of bad faith. Instead, appellee contended that the denial of appellant's UMPD claim was reasonably justified.
 {¶ 6} In support of this contention, appellee submitted the deposition testimony of appellant and Kathleen O'Brinski ("O'Brinski"), a licensed casualty agent, which established conflicting testimony as to whether UMPD coverage was made available to appellant during a May 22, 1998 phone conversation.[1] Appellant testified that O'Brinski had failed to inform her of UMPD coverage; while O'Brinski testified that she always notified the insured of UMPD coverage. Appellee noted that although the foregoing testimonial conflict created a genuine issue of material fact as to whether UMPD coverage was actually offered, such evidence affirmatively demonstrated that appellee's denial of appellant's UMPD claim was reasonably justified. Thus, appellee concluded that "[o]ther than the presence of a contractual dispute as to whether [O'Brinski] made available UMPD coverage to [appellant] on May 22, 1998, there is no other alleged conduct on the part of [appellee] that would support a claim of bad faith."
 {¶ 7} Appellant filed a response to the motion for partial summary judgment, arguing that a genuine issue of material fact remained as to whether appellee acted in bad faith. In short, appellant argued that appellee's decision to deny UMPD coverage was not supported by evidence showing such coverage was made available and, therefore, the denial was not reasonably justified.
 {¶ 8} First, appellant maintained that O'Brinski's deposition testimony, and her own deposition testimony, created a genuine issue of material fact relating to appellee's alleged bad faith denial of the UMPD claim. Specifically, appellant stated that the conflicting testimony demonstrated appellee's failure to make UMPD coverage available on May 22, 1998. Appellant concluded that because appellee did not make UMPD coverage available, such coverage arose by operation of law, pursuant to R.C. 3937.181(A), and, as a result, appellant's denial was in bad faith.
 {¶ 9} Appellant submitted the following evidentiary material: (1) the deposition testimony of Robert Rosinski ("Rosinski"), a claims supervisor for appellee; (2) the deposition testimony of Lyle Saylor ("Saylor"), a manager of legal analysis for appellee; (3) the deposition testimony of Michele Campbell ("Campbell"), a claims representative for appellee; and (4) various evidentiary exhibits detailing the provisions of the policy and the internal communications among the aforementioned individuals. Appellant noted that Rosinski was the individual ultimately responsible for denying her UMPD claim. Based upon the foregoing evidentiary submissions, appellant asserted that when Rosinski denied her UMPD claim, he did so with no knowledge of whether UMPD coverage had been made available to her; thus, such decision was arbitrary and not reasonably justified.
 {¶ 10} On June 5, 2003, the trial court issued a judgment entry granting appellee's motion for partial summary judgment. The court stated, "[appellant] is asking the Court to interpret certain internal communications of [appellee] as proving that [appellant] was not advised of the availability of [UMPD] coverage, because there is no written documentation that she was. While this may help [appellant] to persuade a jury that it is more probable than not that [appellant] was not advised regarding [UMPD] coverage, the evidence does not create a jury question on the claim of bad faith[.]" Accordingly, the court concluded that because there was no genuine issue of material fact with respect to appellant's bad faith claim, and because appellee was entitled to judgment as a mater of law, the motion for partial summary judgment was sustained.
 {¶ 11} Appellant filed a motion to certify the foregoing judgment entry for appeal under Civ.R. 54(B). The court denied appellant's motion to certify, and appellant's remaining claim for compensatory damages proceeded to a jury trial.
 {¶ 12} Following trial, a verdict was rendered in favor of appellant. Jury interrogatories demonstrated the jury found, by a preponderance of the evidence, that on May 22, 1998, O'Brinski failed to advise appellant of the availability of UMPD coverage. Accordingly, the jury awarded appellant $1,500 in compensatory damages.
 {¶ 13} Thereafter, appellant filed a timely notice of appeal as to the trial court's grant of partial summary judgment and now sets forth the following assignment of error for our consideration:
 {¶ 14} "The trial court erred to the prejudice of Plaintiff-Appellant in granting Grange's Motion for Partial Summary Judgment."
 {¶ 15} We will first set forth the applicable standard of review. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105. Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-12.
 {¶ 16} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 17} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim.Dresher at 293.
 {¶ 18} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
 {¶ 19} Under her sole assignment of error, appellant argues that the trial court erred in granting appellee's motion for partial summary judgment, thereby precluding her claim for punitive damages based upon appellee's bad faith denial of UMPD coverage. The issue presented for review is whether appellee's decision to deny UMPD coverage was made without an adequate analysis of appellant's claim that would reasonably justify such a denial. Appellant maintains that, despite O'Brinski's testimony and internal communications among appellee's employees, Rosinski's denial of UMPD coverage was arbitrary, as it was made without any knowledge or information regarding the alleged notification of UMPD availability.
 {¶ 20} It is well established under Ohio law that "[b]ased upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." Hoskins v. Aetna LifeIns. Co. (1983), 6 Ohio St.3d 272, paragraph one of the syllabus. See, also, Mentor Chiropractic Ctr. Inc. v. State FarmFire and Cas. Co. (2000), 139 Ohio App.3d 407, 411. The insurer's failure to act in good faith is the equivalent of acting in bad faith. Hoskins at 275, citing Slater v.Motorists Mut. Ins. Co. (1962), 174 Ohio St. 148. Accordingly, "[i]nasmuch as the breach of the duty to act in good faith is tortious in nature, punitive damages may be recovered against an insurer who breaches his duty of good faith in refusing to pay a claim of its insured upon adequate proof." Hoskins at 277.
 {¶ 21} "[T]o grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premisedon either the status of the law at the time of the denial or thefacts that gave rise to the claim. * * * To withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and theinsurer either had actual knowledge of that fact or intentionallyfailed to determine whether there was any reasonablejustification for refusing the claim." (Emphasis added.) Tokles Son, Inc. v. Midwestern Indem. Co. (1992), 65 Ohio St.3d 621,630.
 {¶ 22} In short, our decision turns upon whether there was evidence before the trial court demonstrating a genuine issue of material fact as to whether appellee's denial of UMPD coverage was totally arbitrary and capricious. See, e.g., MentorChiropractic at 411. Accordingly, it is irrelevant that a jury ultimately determined appellant's claim was wrongfully denied, as our focus is solely upon whether appellee's decision making process amounted to bad faith.
 {¶ 23} To resolve this issue, we must review the underlying law governing an insured's claim for UMPD coverage. On May 22, 1998, when appellant's 1991 Pontiac Grand Prix was added to the policy, R.C. 3937.181(A) provided:
 {¶ 24} "No automobile liability or motor vehicle liability policy of insurance offering uninsured and underinsured motorist coverages under division (A) of section 3937.18 of the Revised Code shall be delivered or issued for delivery unless coverage is also made available for damage to, or the destruction of, any automobile or motor vehicle specifically identified in the policy, for the protection of those persons insured under the policy who are legally entitled to recover for the damage to or destruction of any automobile or motor vehicle specifically identified in the policy from the owner or operator of an uninsured motor vehicle." (Emphasis added.)
 {¶ 25} Pursuant to R.C. 3937.181, the insurer is required to make UMPD coverage available. In Murray v. Woodward (1997),120 Ohio App.3d 180, 186, the Sixth Appellate District determined that the insurer is required to advise its insured of the availability of UMPD coverage, the premium therefore, and provide a brief description of the coverage. Evidence that the insurer has properly advised the insured of UMPD coverage is sufficient to establish that the insurer has "made available" UMPD coverage under R.C. 3937.181(A). Id. Accordingly, once a court has determined that UMPD coverage was "made available," further evidence of the insured's written or oral waiver of UMPD coverage is not necessary, as the "fact that no premium was paid for the coverage is sufficient proof that the coverage was not accepted." Id.
 {¶ 26} However, if the evidence fails to demonstrate that the insurer made UMPD coverage available to the insured, then UMPD coverage arises by operation of law. Id., citing R.C.3937.181(B).
 {¶ 27} Appellant maintains on appeal that the evidentiary materials submitted with the trial court demonstrate that, notwithstanding O'Brinski's testimony alleging that UMPD coverage was made available, Rosinski's ultimate decision to deny coverage was made arbitrarily and without any knowledge of whether appellant was properly notified of such coverage. Thus, appellant concludes that the denial was made in bad faith.
 {¶ 28} In rebuttal, appellee argues that the decision to deny appellant's UMPD claim was in good faith, as the evidentiary materials merely established a contractual breach, rather than an arbitrary decision. Therefore, appellee concludes that appellant failed to present a genuine issue of material fact relating to her claim of bad faith and appellee is entitled to judgment as a matter of law.
 {¶ 29} A review of the record before us demonstrates that appellee did not act in bad faith when it denied appellant's UMPD claim. We first note that there was some confusion among the individuals providing deposition testimony as to whom made the ultimate decision to deny the claim. An examination of the internal communications among these individuals, however, confirms that Rosinski made the final decision to reject appellant's claim.
 {¶ 30} Rosinski's testimony, and the internal communications among the individuals involved in denying appellant's claim, confirms that his denial of appellant's UMPD claim was predicated upon a legal recommendation by Saylor and a review of appellant's policy. Thus, the denial of appellant's claim was neither arbitrary nor capricious.
 {¶ 31} Campbell and O'Brinski were initially notified of appellant's claim for UMPD coverage shortly after the September 26, 1999 accident. An exhibit submitted with appellant's brief in opposition confirms that, on November 4, 1999, Campbell had reviewed appellant's policy and claim, and indicated she would be contacting an attorney for a recommendation.[2] Campbell testified that on November 5, 1999, she emailed Saylor for legal advice on appellant's claim. Although the e-mail did not directly address the issue of whether O'Brinski was required to make UMPD coverage available, it did generally request an analysis of what coverage was provided under appellant's policy.
 {¶ 32} Campbell further testified that she received a reply e-mail from Saylor on November 5, 1999, advising that appellant's claim be denied. Saylor's deposition testimony confirmed that he answered Campbell via e-mail and recommended that the claim be denied. Campbell then testified that she transferred Saylor's recommendation to Rosinski.
 {¶ 33} Saylor testified that his recommendation to deny UMPD coverage was made pursuant to his interpretation of "made available" under R.C. 3937.181(A). His testimony in this respect was as follows:
 {¶ 34} "Q. What evidence did you use to determine that [appellee], quote, made [UMPD coverage] available?
 {¶ 35} "A. They had a policy with [appellee] an automobile policy with [appellee] made available means that when you get an insurance policy if you want to buy it's available. [Appellant] had an auto policy so it had to have been available at the time she requested an auto policy because it was available through [appellee].
 {¶ 36} "* * *
 {¶ 37} "Q. Is it you understanding of the statute that [appellee] did not have a duty to actually offer it to the insured, say, here is UMPD, here is what it is, would you like it or would you like to decline it?
 {¶ 38} "A. Outside of the Sixth Appellant [sic] District which had that interpretation, no, it just had to be available.
 {¶ 39} "Q. So [appellee] did not have an obligation, I am not saying in writing, but it's your understanding that at no time did [appellee] have an obligation to make this coverage available by indicating its availability, indicating the cost or anything else like that?
 {¶ 40} "A. As I interpret the statute, made available it's available if you want to buy it.
 {¶ 41} "Q. Okay. And your decision to recommend a denial of this claim was based solely on the statute?
 {¶ 42} "A. My interpretation of the statute yes."
 {¶ 43} The foregoing testimony demonstrates that Saylor's decision to recommend a denial of appellant's UMPD claim was predicated upon an interpretation of R.C. 3937.181(A). At the time of Saylor's interpretation, there was only non-binding case law from the Sixth Appellate District which defined "made available" pursuant to R.C. 3937.181(A).[3] Appellant failed to provide evidence that there was any binding authority that would render Saylor's interpretation of the statute, at the time of the denial, not reasonably justified.
 {¶ 44} Rosinski's testimony demonstrates that his denial of the UMPD claim was based upon appellant's prior coverage under the policy, and Saylor's recommendation and analysis, to wit:
 {¶ 45} "Q. * * * So your decision to deny was based on the fact, number one, that there was no UMPD prior. What other factors did you consider?
 {¶ 46} "A. There was no UMPD on the current policy, the policy that was in force, okay, then I ran a legal analysis through Lyle Saylor, who is our manager of legal reserve, inquiring about the need for securing of a rejection form. And upon receiving my response to that made the decision that there was no — there would not be UMPD coverage afforded in this case."
 {¶ 47} Although Saylor's interpretation of R.C. 3937.181(A) was ultimately determined to be incorrect, there is no evidence that, at the time of the denial, the misinterpretation was made in bad faith. An improper legal analysis or statutory interpretation which results in a contractual breach does not, standing alone, establish bad faith. Instead, appellant's claim for UMPD coverage was fairly debatable, and the denial was premised on the status of the law at the time of the refusal. See, e.g., Tokles Son, Inc. at 630.
 {¶ 48} The circumstances of the instant case indicate that appellee did not blindly ignore appellant's claim. See, e.g.,Hoskins at 279. To the contrary, appellant's claim was reviewed and analyzed by three separate individuals within the hierarchy of appellee's company. This demonstrates that there was a systematic process employed to determine whether appellant's UMPD claim should be denied. Accordingly, there is no evidence of a random and uninformed decision making process.
 {¶ 49} Based upon the foregoing analysis, appellant has failed to demonstrate a genuine issue of material fact with respect to her bad faith claim as the evidence before the trial court merely showed a contractual breach. Absent is any evidence that appellant's denial of UMPD coverage was arbitrary or capricious. Thus, appellant's sole assignment of error is without merit, and we hereby affirm the judgment of the trial court.
Ford, P.J., O'Neill, J., concur.
[1] The May 22, 1998 phone conversation was initiated by appellant for the purpose of adding the recently purchased 1991 Pontiac Grand Prix to her already existing policy coverage. As a result of this phone conversation, the 1991 Pontiac Grand Prix was added to the policy, thereby replacing one of appellant's previous automobiles listed under the policy.
[2] The exhibit was a log of dated notes recording various communications Campbell had with O'Brinski regarding appellant's claim.
[3] Saylor's testimony further established that the non-binding case law he referred to was the previously mentioned Murray
case.