[Cite as *Ohio Natl. Life Assur. Corp. v. Satterfield*, 194 Ohio App.3d 405, 2011-Ohio-2116.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

OHIO NATIONAL LIFE ASSURANCE
CORPORATION,

    Appellant and Cross-Appellee,

    v.

SATTERFIELD,

    Appellee and Cross-Appellant.

C.A. No.      25282

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2009-02-1653

DECISION AND JOURNAL ENTRY

Dated: May 4, 2011

Marion H. Little Jr. and Christopher J. Hogan; and Scott Salsbury and Pooja Alag Birg, for appellant and cross-appellee.

David J. Hanna and Robert L. Tucker, for appellee and cross-appellant.

DICKINSON, Presiding Judge.

INTRODUCTION

{¶1} John Satterfield bought a life insurance policy from Ohio National Life Assurance Corporation. On his application, Mr. Satterfield wrote that he had never had cancer, which was true at the time he submitted the application. While Ohio National was processing the application, however, he was diagnosed and treated for cancer. He did not update his application, and Ohio National issued him a policy. When Mr. Satterfield died 3 1/2 years later, Ohio National refused to pay benefits, alleging that there was no contract because of the change

in Mr. Satterfield's medical history before it delivered the policy. It filed for a declaratory judgment, arguing that it did not have to pay benefits. Mr. Satterfield's wife, Carole Satterfield, who was the beneficiary of the policy, counterclaimed, alleging breach of contract and bad faith. The trial court entered judgment for Mrs. Satterfield, concluding that it was too late for Ohio National to contest the life insurance contract, that Ohio National breached the contract, that Mrs. Satterfield was entitled to benefits, and that Ohio National had acted in bad faith when it denied her claim. It awarded Mrs. Satterfield the amount of the policy and interest, but not attorney fees. Ohio National has appealed, arguing that the trial court incorrectly determined that it breached the contract and acted in bad faith. Mrs. Satterfield has cross-appealed, arguing that the trial court's damages award on her bad-faith claim was inadequate, that the court incorrectly denied her motion for new trial, and that the court incorrectly denied her attorney fees in connection with her successful motion to transfer venue. We affirm because the trial court properly interpreted the contract, its bad-faith and damages findings were not against the manifest weight of the evidence, and it exercised proper discretion when it denied Mrs. Satterfield's motion for costs and fees.

RELEVANT CONTRACT PROVISIONS

{¶2} According to the policy that Ohio National delivered to Mr. Satterfield, their "entire contract is your application and this policy." See R.C. 3915.05(C) (providing that "[n]o policy of life insurance shall be issued or delivered * * * unless such policy contains * * * [a] provision that the policy and the application therefor * * * shall constitute the entire contract between the parties."). According to Mr. Satterfield's application, "[i]t is mutually agreed that: * * * no policy shall be in force unless and until: (1) it is delivered to [the applicant]; (2) the first full premium is paid during the lifetime of all persons to be insured under the policy; and (3) the

statements and answers in this application remain true and complete, without material change, as of the date of the policy delivery." According to the policy, Ohio National "may not contest this contract due to a false statement, material to the risk, which was made in your application for an amount of insurance, if: (a) you live more than 2 years after such amount takes effect; and (b) the contract is in force at the time of your death." See also R.C. 3915.05(C) (providing that life insurance contracts must contain "[a] provision that the policy * * * shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date, except for nonpayment of premiums.").

## BREACH OF CONTRACT

{¶3} Ohio National's first assignment of error is that the trial court incorrectly entered judgment for Mrs. Satterfield on her breach-of-contract claim. It has argued that because Mr. Satterfield got cancer between the date he submitted his application and the date it delivered his policy, they never had a contract. According to Ohio National, Mr. Satterfield's diagnosis was a material change to a statement that he made in his application, resulting in the failure of one of the contract's conditions precedent. Ohio National has argued that Mr. Satterfield bore the risk of a change in his health after he submitted his application. According to it, if Mr. Satterfield had wanted to protect himself from a postapplication change in health, he could have purchased a temporary life insurance policy.

{¶4} Mrs. Satterfield does not deny that her husband's cancer diagnosis was a material change to a statement he made in his application, but argues that Ohio National's argument is barred by the policy's incontestability clause. Ohio National has argued that the incontestability clause does not apply because it only applies to a contract, which was never formed in this case because of the failure of the condition precedent. See *Riggs v. Std. Slag Co.* (Nov. 10, 1993), 9th

Dist. No. 16199, 1993 WL 473817, at *2 ("A contract is not formed until all conditions precedent are satisfied").

{¶5} We reject Ohio National's argument because the "material change" clause was not a condition precedent. "A condition precedent is 'an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises.'" *Plazzo v. Nationwide Mut. Ins. Co.* (Feb. 14, 1996), 9th Dist. No. 17022, 1996 WL 62110, at *3, quoting Calamari and Perillo, Contracts (1970) 226, Section 138. According to the Ohio Supreme Court, "a condition precedent is one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.* (1917), 97 Ohio St. 1, 11.

{¶6} In *Mumaw*, John Mumaw purchased a life insurance policy with a provision that "this contract shall not be in force unless * * * the insured is alive and in sound health upon * * * the date of the delivery of this policy." Id. at 5. When Mumaw died less than a year later, the insurance company refused to pay his wife benefits, alleging that the "sound health" provision was a condition precedent and that Mrs. Mumaw had not proved that her husband was of sound health at the time the policy was delivered. Id. at 3-4. The Supreme Court explained the difference between a condition precedent and a warranty, noting that a warranty "lacks the essential element of a condition precedent, in that it contains no stipulation that an event shall happen or an act shall be performed in the future, before the policy shall become effectual. It is more in the nature of a defeasance, where the insured contracts that, if the representations made by him are not true, the policy shall be defeated and avoided." Id. at 9, quoting *Chambers v. Northwestern Mut. Life Ins. Co.* (Minn. 1896), 67 N.W. 367, 368. Noting that the sound-health

and other related provisions did not require "that 'some event shall happen,' or 'some act shall be performed' afterwards, in order that the contract shall be in force," the Supreme Court concluded that "[t]hey are rather in the nature of a warranty that a certain state of facts which the parties supposed to then exist did in truth exist." Id. at 12.

{¶7} In *Mumaw*, the Ohio Supreme Court explained that "[i]n the case of a warranty, the contract takes effect; but it may provide that if there is a breach of the warranty or a misrepresentation of fact the contract is void ab initio." Id. at 12. It concluded that because the contract provisions at issue were warranties instead of conditions precedent, the insurance company had the burden of proving noncompliance. Id. at 13.

{¶8} "Whether a provision in a contract constitutes a condition precedent or a warranty of a fact vital to the contract is a question of intent; and the intention will be ascertained by considering the language not only of the particular provision, but of the whole contract and its subject-matter." *Mumaw,* 97 Ohio St. 1, at paragraph two of the syllabus. Because "[p]olicies of insurance * * * are prepared by the insurance company, and * * * are reasonably open to different interpretations, [they] will be construed most favorably to the insured." Id. at paragraph one of the syllabus.

{¶9} The life insurance contract at issue in this case provides that "no policy shall be in force unless and until: (1) it is delivered to [Mr. Satterfield]; (2) the first full premium is paid during the lifetime of [Mr. Satterfield]; and (3) the statements and answers in [Mr. Satterfield's] application remain true and complete, without material change, as of the date of the policy delivery." The first two clauses identify "some event [that] shall happen" or "some act [that] shall be performed" and, therefore, are properly characterized as conditions precedent. *Mumaw,* 97 Ohio St. at 12. The third clause, however, does not refer to a certain act or event, rather it is

an assurance that the state of facts – that is, the truth of Mr. Satterfield's application answers, which the parties supposed to then exist – remained true. See id. We, therefore, conclude, in accordance with *Mumaw*, that the material-change clause was not a condition precedent but a warranty.

{¶10} Because the "material change" clause was a warranty, not a condition precedent, the contract went into force, but Ohio National reserved the right to prove noncompliance. *Mumaw* at 12-13. The problem for Ohio National in this case, however, is that it did not challenge whether Mr. Satterfield's answers remained true within two years. The trial court, therefore, correctly concluded that Ohio National had forfeited its right to contest the policy. See R.C. 3915.05(C); *Mut. Res. Fund Life Assn. v. Austin* (1st Cir. 1905), 142 F. 398, 399 ("It is the purpose of an ordinary incontestable clause to annul all warranties * * * that might defeat the rights of the assured").

{¶11} This result is consistent with public policy. As the Ohio Supreme Court noted in *Mumaw*, "[i]t is a matter of common knowledge that life insurance companies do not issue such policies until they have received what they regard as satisfactory evidence that the person to be insured is in good health." 97 Ohio St. at 11, quoting *Lee v. Prudential Life Ins. Co.* (Mass. 1909), 89 N.E. 529, 531. "It is also common knowledge that policies are issued at the solicitation of the company, and it may well be said that it is the duty of the insurance company not to enter into a contract of such a character until it is convinced that the insured is in good health." Id. This court has not read any language in the application or policy that imposed a duty on Mr. Satterfield to notify Ohio National about the change in his health. Upon the face of the contract, it appeared valid. Ohio National bore the burden of proving that the statements and answers that Mr. Satterfield gave in his application did not "remain true," which it could not do

at the time it filed its complaint because of the incontestability provision. See *Mut. Res. Fund Life Assn.* at 401-402 ("The argument that the policy was not in * * * force is predicated upon an extrinsic fact not appearing upon the face of the policy * * * In setting up * * * this extrinsic fact, the company is contesting its policy"). The trial court correctly entered judgment for Mrs. Satterfield on her breach-of-contract claim. Ohio National's first assignment of error is overruled.

## BAD FAITH

{¶12} Ohio National's second assignment of error is that the trial court incorrectly entered judgment for Mrs. Satterfield on her bad-faith claim. It has argued that because Mrs. Satterfield's right to benefits under the insurance contract was fairly debatable, it did not act in bad faith.

{¶13} "[B]ased on the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276. "A breach of this duty will give rise to a cause of action against the insurer." Id. The Ohio Supreme Court has held that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, paragraph one of the syllabus. Even if a company believes it was justified in its conduct, its belief "may not be an arbitrary or capricious one." *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 188.

{¶14} Ohio National has argued that it based its denial of benefits on existing Ohio case law. See *Tokles & Son Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 630 (noting that in deciding whether an insurer lacked good faith, courts should examine whether the claim

"was fairly debatable" and whether "the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim"). According to Ohio National, its legal department relied on *Battle v. Middle W. Mut. Benefit Assn.* (1932), 13 Ohio Law Abs. 357; *B.J. Hall v. New England Mut. Life Ins. Co.* (S.D. Ohio 1995), No. C-1-93-295; *John Hancock Mut. Life Ins. Co. v. Snyder* (1935), 52 Ohio App. 438; and *Atkinson-Dauksch Agencies Inc. v. John Hancock Mut. Life Ins. Co.* (6th Cir.1973), 488 F.2d 179, in deciding to reject Mrs. Satterfield's claim for benefits.

{¶15} In *Battle,* Rosa Battle died approximately four years after she took out a life insurance policy. Although the policy contained a two-year incontestability provision, the insurance company denied benefits, relying on two clauses in the policy. The first clause was that the policy would not take effect "unless upon its date the member shall be alive and in good health and the dues duly paid." 13 Ohio Law Abs. at 358. The other clause provided that the insurer "assumes no obligation for death resulting from sickness or disease * * * prior to the date hereof." Id. The insurer argued that Battle was not in good health at the time it issued the policy and that she died from a goiter that she had before it issued the policy. The Seventh District agreed, concluding that notwithstanding the incontestability provision, the policy never covered the disease that caused Battle's death.

{¶16} Battle died from a disease that was "especially exempted from liability." Id. at 360. Unlike the policy in that case, there was no clause in Mr. Satterfield's policy that exempted Ohio National depending on his cause of death. The policy does not provide that Ohio National will not pay benefits if Mr. Satterfield's death is caused by a disease or injury that he suffered before the date of the policy. Ohio National, therefore, could not have reasonably relied on *Battle* in determining whether to pay benefits under his policy.

{¶17} According to Ohio National, *B.J. Hall* was a case that one of its in-house lawyers was involved with before coming to work for it. The lawyer testified that the case was in federal court and involved a disability insurance policy. Although the parties eventually settled the case, at one point Hall moved for summary judgment based on the policy's incontestability provision. The trial court denied the motion because Hall had signed a document after he submitted his application that he had "not consulted with or been examined by a physician * * * and has undergone no change in health." It, therefore, concluded that genuine issues of material fact existed regarding whether the contract contained a condition precedent that was not met.

{¶18} In *B.J. Hall*, the trial court presumed that the policy's change-in-condition clause was a condition precedent and did not analyze that issue. Moreover, unlike in that case, Mr. Satterfield was never asked if his application answers had changed, and there was no evidence that he ever attempted to hide the fact that he had been diagnosed with cancer. At the time he submitted his application, Mr. Satterfield gave Ohio National permission to obtain his medical records for 26 months. Furthermore, since *B.J. Hall* settled, the trial court's decision was of no effect.

{¶19} In *Snyder*, Franklin Snyder died 18 months after purchasing a life insurance policy. Although the insurer refused to pay benefits, it did not attempt to cancel the policy for fraud until more than two years after the date it was issued. This court considered whether the insurer could allege fraud as a defense after the expiration of the policy's two-year contestability period. This court determined that it could not, concluding that the "circumstances herein do not * * * constitute such a situation as rendered the contract of insurance void ab initio, but rather one where the contract was voidable at the option of the insurer." 52 Ohio App. at 444. This court noted that "the very purpose of the contestable period is to give the insurer an opportunity

to make inquiry into the question of whether or not fraud or misrepresentation on the part of the insured was present in the obtaining of the contract, and we further understand that if such conclusion was not reached and acted upon by the insurer within the contestable period, the insurer could not thereafter be permitted to defend an action upon the policy upon any ground other than as specified in the incontestable clause of the contract, except for such fraud as rendered the contract void ab initio." Id. at 443.

{¶20} In *Snyder*, this court identified fraud as the only defense that an insurer might be able to raise more than two years after a life insurance contract was delivered to the insured. Because Ohio National did not allege any fraud by Mr. Satterfield, its denial of benefits could not reasonably have been based on this court's decision in *Snyder*.

{¶21} In *Atkinson-Dauksch Agencies, Inc.,* 488 F.2d 179, Robert Miller applied for a life insurance policy, payable to Atkinson-Dauksch Agencies. The application contained a provision that the policy would only take effect if, at the time of delivery, Miller had not been examined or treated by a doctor since completing his application. Before the insurance company delivered the policy, Mr. Miller was admitted to and treated at a hospital. When he died two days after receiving the policy, the insurance company refused to pay benefits. The Sixth Circuit affirmed the trial court's award of summary judgment to the insurer, concluding that the issue was "one of contract law presented by an agreement between sophisticated parties." Id. at 181. Because Miller died only two days after receiving the policy, *Atkinson-Dauksch Agencies* did not require the court to interpret or apply an incontestability clause. It, therefore, should have been manifest to Ohio National that that case presented a different scenario than this case.

{¶22} The evidence at trial revealed that Ohio National's lawyer did little research before recommending that the company deny Mrs. Satterfield's claim, relying on the work he

had done ten years earlier in *B.J. Hall*, which was not a life insurance case. According to the lawyer, he did not even review R.C. 3915.05 before advising the claims department to deny Mrs. Satterfield's claim. Ohio National's employees also admitted that Ohio National's death-claims manual provides that any policies that are more than two years old are not contestable. Nevertheless, Ohio National did not even mention the possible application of the incontestability clause in the letter it sent to Mrs. Satterfield.

{¶23} We have reviewed the record and conclude that there was sufficient evidence to support the trial court's determination that Ohio National did not have reasonable justification for denying Mrs. Satterfield's claim for benefits. See *Zoppo,* 71 Ohio St.3d at 555 ("There was ample evidence to support the jury's finding that Homestead failed to conduct an adequate investigation and was not reasonably justified in denying Zoppo's claim"). Ohio National's second assignment of error is overruled.

## BAD-FAITH DAMAGES

{¶24} Mrs. Satterfield's first assignment of error is that the trial court's damage award on her bad-faith claim was against the manifest weight of the evidence. Her second assignment of error is that the trial court incorrectly denied her motion for a new trial on the question of damages. Although the trial court found that Ohio National had acted in bad faith, it awarded her only $150,000, the amount of the insurance policy. Mrs. Satterfield has argued that she was also entitled to emotional-distress damages.

{¶25} "[A]n insurer who acts in bad faith is liable for those compensatory damages flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract." *Zoppo,* 71 Ohio St.3d at 558. Punitive damages may also be recovered "against an insurer that breaches its duty of good faith in refusing to pay a claim of its insured upon proof of actual

malice, fraud or insult on the part of the insurer." Id. at 557, quoting *Staff Builders Inc. v. Armstrong* (1988), 37 Ohio St.3d 298, paragraph two of the syllabus. "To set aside a [damage] award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the [award] is so disproportionate as to shock reasonable sensibilities, cannot be reconciled with the undisputed evidence in the case, or indicates that the [trier of fact] lost its way in assessing compensatory damages by failing to include all items making up the plaintiff's claim." *Karson v. Ficke*, 9th Dist. No. 01 CA 3252-M, 2002-Ohio-4528, at ¶ 22.

**{¶26}** Mrs. Satterfield alleged that Ohio National acted in bad faith when it denied her claim for benefits, filed its declaratory-judgment action in Cincinnati, served her at night, served her with three sets of discovery requests, and attempted to appeal one of the trial court's interlocutory decisions. The trial court, however, found only that Ohio National acted in bad faith when it initially denied her claim for benefits, and it awarded her no noneconomic compensatory damages. It also determined that because Mrs. Satterfield had not proven that Ohio National acted with actual malice, she was not entitled to punitive damages.

**{¶27}** Mrs. Satterfield testified that when she received Ohio National's denial-of-benefits letter, she felt confused, distressed, angry, sad, and frightened. She testified that her husband had assured her that they were covered, so when she received the letter, she did not know what direction to go. Mrs. Satterfield has noted that even though it has been almost three years since her husband's death, she still has not received any proceeds from his policy.

**{¶28}** Mrs. Satterfield testified that after she read the denial-of-benefits letter, she spoke to her son, who told her to seek legal advice. On cross-examination, she testified that the stress of the denial of her claim has affected her concentration at work, but she denied that she had any

economic loss. She also testified that she has continued all of her social activities without interruption.

{¶29} In *Carr v. Charter Natl. Life Ins. Co.* (1986), 22 Ohio St.3d 11, Paul and Vallie Carr took out a loan to buy a trailer. They also bought a credit life insurance policy in case Mr. Carr died before the loan was repaid. When Mr. Carr died before the loan was repaid, the life insurance company refused to pay the entire balance of the loan, resulting in the repossession of the trailer. Mrs. Carr obtained a default judgment against the insurance company, and the trial court awarded her $200,000 in compensatory damages. The Ohio Supreme Court reversed the damage award, concluding that it was not supported by the evidence. Id. at 12. It noted that even though Mrs. Carr testified that she "had suffered emotional upset from the [insurer's] conduct, * * * no medical evidence of any kind was offered to support [her] testimony." Id. at 13. "Nor did [Mrs. Carr] introduce any evidence of alternative living expenses [she] may have incurred as a result of the repossession." Id. "[G]iven the total lack of competent, credible evidence to support such a large amount of compensatory damages," the court remanded the case for a new hearing on the issue of damages. Id. at 13-14.

{¶30} As in *Carr*, Mrs. Satterfield did not present any medical evidence to corroborate her alleged emotional damages. As the trier of fact, the trial court was entitled to reject her testimony and conclude that she had not suffered any noneconomic compensatory damages. Upon review of the record, we conclude that the court's damages award is not "so disproportionate as to shock reasonable sensibilities, cannot be reconciled with the undisputed evidence in the case, or indicates that [the court] lost its way in assessing compensatory damages." *Karson,* 2002-Ohio-4528, at ¶ 22. Mrs. Satterfield's first assignment of error is overruled.

{¶31} Regarding Mrs. Satterfield's motion for new trial, Civ.R 59(A) provides that "[a] new trial may be granted * * * upon any of the following grounds: * * * (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice; (5) Error in the amount of recovery, whether too large or too small * * * [or] (6) The judgment is not sustained by the weight of the evidence * * *." Mrs. Satterfield has noted that the Ohio Supreme Court has held that "a new trial may be granted on the ground of the inadequacy of the damages * * * when it appears upon the facts proved that the [trier of fact] must have omitted to take into consideration some of the elements of damage properly involved in the plaintiff's claim." *Toledo Rys. & Light Co. v. Mason* (1910), 81 Ohio St. 463, syllabus.

{¶32} The trial court did not fail to consider an element of Mrs. Satterfield's damages; its judgment reveals that it considered, but specifically rejected, her request for damages for emotional suffering. We conclude that the trial court correctly denied Mrs. Satterfield's motion for new trial on the issue of damages. Mrs. Satterfield's second assignment of error is overruled.

ATTORNEY FEES

{¶33} Mrs. Satterfield's third assignment of error is that the trial court incorrectly denied her motion for attorney fees and costs regarding her successful motion for transfer of venue. Under Civ.R. 3(C)(2), "[if] an action is transferred to a county [in] which [venue] is proper, the court may assess costs, including reasonable attorney fees, to the time of transfer against the party who commenced the action in [the other] county." According to the official comments to Civ.R. 3(C)(2), the rule was "needed to place a curb upon the party who deliberately or heedlessly files an action in a county where venue is not proper thereby causing these additional expenses. Costs should not be assessed under this rule if venue is in doubt so that the error was one that any diligent attorney could have made." This court has held that an award of costs and

fees under Civ.R. 3(C)(2) is within the sound discretion of the trial court. *Harkai v. Scherba Indus., Inc.*, 9th Dist. No. 02CA0007-M, 2003-Ohio-366, at ¶ 5.

**{¶34}** According to Mrs. Satterfield, when her lawyer requested an explanation from Ohio National for why it had rejected her claim despite the incontestability clause, Ohio National's in-house lawyer told him that he was about to leave on vacation and would get back to him in two weeks. Mrs. Satterfield's lawyer extended the lawyer a professional courtesy and postponed further action on Mrs. Satterfield's claim until he heard back from him. Before the lawyer got back in touch, however, Ohio National filed a lawsuit in Hamilton County, which is in the opposite corner of the state from Mrs. Satterfield. It also had a sheriff personally serve Mrs. Satterfield at night so that it could win a potential race to the courthouse. Mrs. Satterfield has argued that Ohio National knew that the last time a law-enforcement officer had come to her door was to tell her that her husband had died. She also argues that Ohio National's filing in Hamilton County was done only to harass and intimidate her.

**{¶35}** Ohio National argues that it reasonably believed that Hamilton County was an appropriate venue for its action. It has noted that under Civ.R. 3(B), "[p]roper venue lies in * * * (3) A county in which the defendant conducted activity that gave rise to the claim for relief; [or] * * * (6) The county in which all or part of the claim for relief arose." According to Ohio National, because Mrs. Satterfield sent a letter to its office in Hamilton County contesting its denial of her claim for benefits, Hamilton County became "[a] county in which [she] conducted activity" that gave rise to its request for a declaratory judgment. Civ.R. 3(B)(3). Mrs. Satterfield also sent all of her husband's medical records to its office in Hamilton County, and Hamilton County is the place where her claim for benefits was denied. Accordingly, Ohio National has

argued that Hamilton County was the "county in which * * * [Mrs. Satterfield's] claim for relief arose[.]" Civ.R. 3(B)(6).

{¶36} Although the trial court did not explicitly rule on Mrs. Satterfield's motion, "when a trial court fails to rule upon a [pretrial] motion, it will be presumed that it was overruled." *Vinylux Prods. Inc. v. Commercial Fin. Group*, 9th Dist. No. 22553, 2005-Ohio-4801, at ¶ 9, quoting *Georgeoff v. O'Brien* (1995), 105 Ohio App. 3d 373, 378. We agree with Ohio National that its decision to file its action in Hamilton was not so heedless that the trial court exercised improper discretion when it failed to award Mrs. Satterfield costs and fees under Civ.R. 3(C)(2). Mrs. Satterfield's third assignment of error is overruled.

## CONCLUSION

{¶37} The trial court correctly determined that Ohio National breached Mr. Satterfield's life insurance contract and that it acted in bad faith. The court's bad-faith damage award was not against the manifest weight of the evidence. The court exercised proper discretion when it implicitly denied Mrs. Satterfield's motion for costs and fees. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

MOORE, J. concurs.

BELFANCE, J. concurs in part and dissents in part.

BELFANCE, Judge, concurring in part and dissenting in part.

{¶38} I concur in the majority of the opinion. However, I respectfully dissent from the majority's resolution of Mrs. Satterfield's first and second assignments of error.

{¶39} "Traditionally, an insured's recovery has been limited to the amount due under the contract, plus interest." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276. Nonetheless, certain exceptions to this rule exist. Id. The Supreme Court of Ohio has held that "[b]ased upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer." Id. at paragraph one of the syllabus. "A bad faith claim, if proven, allows for recovery of extracontractual damages. These are damages over and above those covered by the insurance contract sustained by the insured as a consequence of the insurer's bad faith." *LeForge v. Nationwide Mut. Fire Ins. Co.* (1992), 82 Ohio App.3d 692, 700.

{¶40} However, not every denial of an insurance claim exposes an insurance company to liability in tort. *Hoskins*, 6 Ohio St.3d at 276-277. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, paragraph one of the syllabus. Thus, to establish bad faith, the insured would have to prove more than the insurer breached the contract.

{¶41} In the instant matter, Mrs. Satterfield filed claims for both breach of contract and for bad faith. With respect to the bad-faith claim, the trial court in its initial judgment entry stated that it "finds by a preponderance of the evidence in favor of Mrs. Satterfield * * * on Mrs. Satterfield's bad faith claim based on the denial of Mrs. Satterfield's insurance claim." The court awarded $150,000 in damages, plus interest, which she was entitled to receive as a result of the breach of the insurance contract. The trial court also awarded reasonable attorney fees, which it described as compensatory damages. The court did not award punitive damages.

Thereafter, Mrs. Satterfield filed a motion for a new trial. Mrs. Satterfield asserted that the trial court could not award her attorney fees as compensatory damages; rather, she could only receive attorney fees if she were awarded punitive damages. She also argued that she was entitled to compensatory damages besides the proceeds of the insurance policy and that she was entitled to punitive damages. In ruling on the motion, the trial court, without explanation, vacated the award of attorney fees, apparently agreeing that Mrs. Satterfield could not recover attorney fees without the award of punitive damages. It appears from examining both entries that the trial court desired to award Mrs. Satterfield compensatory damages for her bad-faith claim, in the form of attorney fees; however, when it discovered it could not award attorney fees without first awarding punitive damages, it appears the trial court may have felt constrained to award only contract damages.

{¶42} However, because Mrs. Satterfield succeeded on her bad-faith claim, she was entitled to extracontractual damages, assuming she substantiated them. See *LeForge,* 82 Ohio App.3d at 700. In the trial court's finding of facts it concluded that "Mrs. Satterfield was distraught when she received the denial letter." Thus, the trial court concluded that Mrs. Satterfield suffered some form of damage due to the insurance company's bad faith. Courts have concluded that expert testimony is not necessary to establish bad faith damages "[w]hen it is a matter of common knowledge that a certain act may produce injury." Id. at 700-701, citing *Eastham v. Nationwide Mut. Ins. Co.* (1990), 66 Ohio App.3d 843, 848. Mrs. Satterfield proved that the insurance company acted in bad faith, something that is not an easy task. To conclude without explanation that Mrs. Satterfield is not entitled to any damages for her bad-faith claim, particularly given the trial court's factual findings, is against the manifest weight of the evidence. Further, I cannot determine from the trial court's entry whether the trial court believed it was not

legally permissible to award extracontractual damages outside of attorney fees. Accordingly, I would remand the matter to the trial court so that it can properly consider the issue.