[Cite as *Sanders v. Gabbard*, 2012-Ohio-176.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 96693

## LAURA A. SANDERS, ET AL.

### PLAINTIFFS-APPELLANTS

vs.

## VIRGINIA GABBARD

### DEFENDANT-APPELLEE

## JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-728206

**BEFORE:** Celebrezze, J., Stewart, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**    January 19, 2012

**ATTORNEY FOR APPELLANTS**

Jerome T. Linnen
789 West Market Street
Akron, Ohio   44303-1010


**ATTORNEY FOR APPELLEE**

Michael A. Paglia
Ritzler, Coughlin & Paglia, Ltd.
1360 East Ninth Street
1000 IMG Center
Cleveland, Ohio   44114
FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Appellants, Laura and Scott Sanders, appeal the denial of their motion for a new trial based on the failure of the jury to award monetary damages for pain and suffering when the jury found Virginia Gabbard, the appellee, liable for some economic damages resulting from an auto accident. After a thorough review of the record and law, we affirm.

{¶ 2} The Sanders filed suit against Gabbard on June 2, 2010, seeking compensation for medical bills, lost wages, loss of consortium on behalf of Scott, and pain, suffering, and emotional distress.   Trial commenced on January 19, 2011, where the following was adduced.

{¶ 3} On May 9, 2007, Laura was traveling down Interstate 77 near Rockside Road.   Due to heavy congestion, traffic came to a stop.   After Laura's car stopped, she glanced in her rear-view mirror in time to see Gabbard's car approaching at what she described as a high rate of speed.

Gabbard's car crashed into Laura's, pushing it into the car in front. After the accident, Laura indicated she had no serious injury, refused medical treatment, and was picked up from the scene of the accident by her daughter and driven home.

{¶ 4} The next day, Laura felt stiff and sore. She sought medical treatment at Cuyahoga Falls General Hospital. Her medical records from that visit indicate that she presented with neck, upper back, and shoulder pain. She complained of cervical spine pain and a stiff neck, which the records indicate is characteristic of whiplash injury. She testified that she was unable to move her head from side-to-side. However, the records indicate that Laura had a normal cervical spine examination with a full range of motion, with only soft tissue tenderness of the neck and mild muscle spasms. She was ultimately diagnosed with a cervical strain and cervical muscle spasm, given prescriptions for three medications, and advised to follow up with her primary care physician.

{¶ 5} Laura's primary care physician, Dr. Charles Coven, examined her five days later and noted in the medical records generated from her visit that she complained of back and neck pain. Dr. Coven did not testify at trial.

{¶ 6} After some unsuccessful physical therapy and consultations with other physicians, Laura was referred to a doctor specializing in pain management, Dr. Dhruv Shah. He first saw Laura on June 2, 2008 and

diagnosed her with radiculopathy, a radiating pain or numbness with tingling in her right arm and hand. Dr. Shah treated Laura with pain medication and eventually recommended injections into an area of the cervical spine.

{¶ 7} Fearful of the side effects from these injections, Laura sought alternate routes of treatment and consulted with Dr. Michael Smith, an orthopedic surgeon, who eventually performed a surgical procedure to alleviate Laura's pain and numbness. This procedure was performed on March 8, 2010 with what Laura characterized as only minimal success.

{¶ 8} Laura testified that she still experiences significant loss of feeling in her right hand, as well as tingling. She has a restricted range of motion in her neck and requires daily pain medication in order to function. She further alleged that she incurred $53,597.42 in medical expenses and $9,460 in lost wages as a result of the automobile accident.

{¶ 9} Although Gabbard did not present any witnesses, she argued throughout trial that the medical records demonstrated that Laura had suffered from chronic neck pain at least three years prior to the accident and that she suffered only minimal injury from the accident and was substantially better after only a few weeks.

{¶ 10} On January 21, 2011, the jury returned a verdict in favor of Laura, finding she was injured in the accident, but only awarded her $2,894.86 in damages for medical expenses and nothing for pain and

suffering. The jury found in favor of Gabbard on Scott's loss of consortium claim. On February 11, 2011, Laura and Scott moved for a new trial or, in the alternative, for additur. They argued that the damages awarded were inadequate and against the manifest weight of the evidence. The trial court denied their motion on March 22, 2011.

{¶ 11} Laura and Scott then perfected the instant appeal raising two assignments of error.

## Law and Analysis

## Adequacy of Damages

{¶ 12} Laura and Scott first argue that "[t]he trial court abused its discretion by not granting [their] motion for a new trial on the basis that the jury verdict was inadequate in that it failed to consider pain and suffering as a necessary element of damages." They argue that the award of economic damages for the treatment of pain and suffering necessarily requires an award of damages for pain and suffering.

{¶ 13} Laura and Scott moved for a new trial based on Civ.R. 59(A). Under this rule, a trial court may order a new trial in certain enumerated situations. Their motion was based on Civ.R. 59(A)(4), (6), and (7). These provisions provide for a new trial, at the trial court's discretion, on any of the following grounds:

**{¶ 14}** "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice; * * * (6) The judgment is not sustained by the weight of the evidence * * *; [or] (7) The judgment is contrary to law * * *."

**{¶ 15}** The Ohio Supreme Court, in overturning a decision of this court involving a motion for new trial, set forth the appropriate standard:

**{¶ 16}** "'Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court.'" *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 35, quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). On the direction of the *Harris* court, we do not look to the sufficiency of the evidence sustaining the verdict, but analyze the trial court's decision to deny the motion. *Harris* at ¶ 36.

> A reviewing court must view the evidence in a light most favorable to the trial court's decision, rather than in favor of the nonmoving party. *Jenkins v. Krieger* (1981), 67 Ohio St.2d 314, 423 N.E.2d 856. This court does not weigh the evidence in reviewing a decision on a motion for a new trial. *Mannion v. Sandel* (2001), 91 Ohio St.3d 318, 744 N.E.2d 759. *Perry v.*

*Carter*, 5th Dist. No. 10CA117, 2011-Ohio-4214, 2011 WL 3672072, ¶ 15.

{¶ 17} A long-standing ruling in Ohio provides that "a new trial may be granted on the ground of the inadequacy of the damages found by the jury, when it appears upon the facts proved that the jury must have omitted to take into consideration some of the elements of damage properly involved in the plaintiff's claim." *Toledo Rys. & Light Co. v. Mason*, 81 Ohio St. 463, 91 N.E. 292 (1910), syllabus. Modern Ohio cases still cite to *Toledo Rys.* for that proposition. *E.g., Ohio Natl. Life Assur. Corp. v. Satterfield*, 194 Ohio App.3d 405, 2011-Ohio-2116, 956 N.E.2d 866. However, this proposition does not benefit Laura based on the facts of this case.

{¶ 18} In overruling appellants' motion, the trial court found that

[it] cannot say that the jury lost its way, or that the jury acted with passion or prejudice. Nor can it be said that the verdict is against the manifest weight of the evidence, considering the totality of the circumstances, some of which, as argued by [Gabbard], may tend to offer an explanation for the amount of the verdict.

{¶ 19} The jury did not ignore an element of Laura's claim in arriving at a figure for damages. The jury instructions were correct in describing damages for pain and suffering, and the jury forms set forth past and future economic and non-economic damages, including "pain and suffering," and "mental anguish." The jury did not forget or ignore these elements of damages, as appellants argue. The jury clearly wished to award Laura only

a small amount of the medical expenses she claimed because they did not believe that she was significantly injured in the accident. The jury verdict forms submitted by her provided for a detailed breakdown of past and future economic and noneconomic damages. Six members of the jury found that Laura was entitled to $2,894.86 in past economic damages for medical bills incurred, but left the other spaces blank, one of which was specifically labeled "pain and suffering." These members of the jury then placed on the line just below that labeled "[t]otal damages to the plaintiff Laura L. Sanders" the figure $2,894.86. The judge specifically asked these individual jurors if it was their intention to award Laura $2,894.86. Each replied that it was. The other two jurors found in favor of Gabbard on all of Laura's claims.

{¶ 20} There is a hesitancy by reviewing courts "to disturb as inadequate any verdict where * * * the extent of the injury is a much controverted issue." *Wilson v. Johnson*, 118 Ohio App. 101, 103, 193 N.E.2d 527 (7th Dist.1962), citing *Dadiskos v. Shorey*, 229 F.2d 163 (2d Cir.1956).

{¶ 21} The jury apparently chose not to believe Laura's testimony and that of her experts based on the seeming contradictions to that testimony contained in her medical records. While Laura attempted to explain away these items, it was the jury's prerogative whether to believe this testimony. An award for pain and suffering may have been appropriate in this case, but was not required. *See Seymour v. Pierson*, 5th Dist. No. 2005A00218,

2006-Ohio-961, 2006 WL 509842. The jury could discount Laura's testimony in favor of the apparent contradictions in her medical records. Further, Laura and Scott have presented no plausible evidence that the jury's verdict was motivated by passion or prejudice, as required by Civ.R. 59(A)(4).

> To determine whether a verdict was influenced by passion or prejudice, the court should consider the amount of damages returned and whether the record discloses that the verdict was induced by: "(a) admission of incompetent evidence, (b) misconduct on the part of the court or counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded." *Banas v. Shively*, 8th Dist. No. 96226, 2011-Ohio-5257, 2011 WL 4839085, ¶ 44, quoting *Fromson & Davis Co. v. Reider*, 127 Ohio St. 564, 569, 189 N.E. 851 (1934).

{¶ 22} In support of their assigned error on this point, Laura and Scott argue that the verdict was reached late on Friday and the jury wanted to go home. They conclude the jury did not do its duty to consider all elements of their claim, but instead, cut corners so they would not have to come back on Monday. This theory, if believed, does not show any passion or prejudice. The record does not demonstrate that the jury rushed to a verdict and failed to consider an aspect of damages specifically listed in the verdict form.

{¶ 23} Laura and Scott also cite to statements made by Gabbard's attorney during closing arguments and assert counsel made improper appeals to the passions or prejudices of the jury. However, a reading of the transcript discloses no improper statements necessitating a new trial.

{¶ 24} It appears that the trial court based its decision to deny the motion on the belief that the jury awarded only a small amount of economic damages because they did not believe Laura was seriously injured. The medical records in this case, contradicted by Laura's testimony, provided the basis for that belief. Therefore, the trial court's decision is supported by some competent, credible evidence in the record.

## Manifest Weight

{¶ 25} Laura and Scott next argue that the trial court abused its discretion by not granting their motion for a new trial on the basis that the jury verdict was against the manifest weight of the evidence. They argue that they presented substantial, competent and credible evidence that Laura experienced pain and suffering as a result of Gabbard's negligence, but the jury failed to award any amount for pain and suffering.

{¶ 26} It is well established that when some competent, credible evidence exists to support the judgement rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The knowledge a trial court gains through observing the witnesses and the parties in any proceeding (i.e., observing their demeanor, gestures, and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be

conveyed to a reviewing court by a printed record. *In re Satterwhite*, 8th Dist. No. 77071, 2001-Ohio-4137, 2001 WL 1001017, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. *Seasons Coal Co., supra.* As the Ohio Supreme Court has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990).

{¶ 27} In a similar case with a different procedural posture, the Seventh District determined that, where a jury awarded the *entire amount* of economic damages sought by an injured motorist,

> [t]he trial court did not abuse its discretion in granting a new trial. * * * [T]here is no substantial, credible evidence upon which the jury could have awarded [the injured motorist's] medical bills, but not award any damages for at least the non-economic damages she incurred in the time period after the [first of two car accidents]. *Yock v. Kovalyk*, 7th Dist. No. 06-BE-2, 2007-Ohio-6259, 2007 WL 4166241, ¶ 51.

{¶ 28} In a case where a cyclist was injured in a collision with a bus, the Tenth District, found that

> [t]he evidence of pain and suffering was not disputed, and thus the inadequacy of the award cannot be reconciled with the evidence. We find that the jury lost its way in deliberating on the issue of damages, and that the verdict regarding the issue of noneconomic damages was against the manifest weight of the evidence. *Siders v. Reynoldsburg School Dist.*, 99 Ohio App.3d 173, 192-193, 650 N.E.2d 150 (10th Dist.1994).

{¶ 29} Here, we do not have an analogous situation. The jury did not award Laura her full medical bills. Further, the deferential standard of review also distinguishes the outcomes. As the *Yock* court recognized in differentiating its case from others, "this Court is inclined to leave both decisions (whether granted or denied) undisturbed absent an abuse of discretion." *Id*. at ¶ 15-16.

{¶ 30} Gabbard's arguments throughout trial were based on inconsistencies in the medical records and provide some competent, credible evidence supporting the trial court's decision. One notation in the medical records provided during discovery noted that Laura had suffered from "chronic neck/thoracic pain" at least three years prior to the accident. Laura explained that she had back pain and had breast reduction surgery to cure the problem. There was a six-month gap in treatment that Laura explained was a result of a doctor telling her she could expect to have lasting pain and soreness for six months. She testified she was on pain medication and waited to seek further treatment until this time period elapsed. There were also two emergency room visits after the accident during which Laura did not mention pain ascribed to the accident. She explained that she was under the care of other physicians for the conditions related to the accident and was at

the emergency room to address other concerns, such as a hip injury and abdominal pain.

{¶ 31} Laura offered plausible explanations for each of the apparent inconsistencies highlighted by Gabbard, but the seeming contradictions offer some competent, credible evidence supporting the trial court's decision to deny appellants' motion for a new trial. This case presents a difficult situation where the jury's verdict may be harsh, but is not reversible.

{¶ 32} Therefore, the judge's decision denying appellants' motion was not against the manifest weight of the evidence.

Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR